**A. Diana BASS, Plaintiff,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al., Defendants.**

Civ. A. No. 89–2356–O.

United States District Court, D. Kansas.

May 29, 1991.

1437

George G. Allen, Jr., Ponick, Amick & Allen, Kansas City, Mo., Donna M. Dill, Field, Gentry, Benjamin & Robertson, Overland Park, Kan., for plaintiff.

Robert W. McKinley, Craig T. Kenworthy, Swanson, Midgley, Gangwere, Clarke & Kitchin, Kansas City, Mo., for Prudential Ins. Co. of America.

Laurence L. Duncan, J.C. Penney Co., Inc., Legal Dept., Dallas, Tex., Wm. Dirk Vandever, Mark Buchanan, Popham, Conway, Sweeny, Fremont & Bundschu, Kansas City, Mo., and David W. Hauber, Boddington & Brown, Kansas City, Kan., for J.C. Penney Co., Inc.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter comes before the court on the motion of defendant Prudential Insurance Company of America (hereinafter "Prudential") for summary judgment. A claim for employee benefits submitted by plaintiff A. Diana Bass (hereinafter "Bass") was denied by Prudential. Prudential contends that its decision to deny benefits cannot be overturned unless it was arbitrary and capricious. Bass insists that the court engage in a *de novo* review of the denial. The parties also contest the cause of Bass' injuries and plaintiff seeks enforcement of disclosure provisions of the Employee Retirement Income Security Act (hereinafter "ERISA"), 29 U.S.C. § 1001 *et seq.* For the reasons stated below, the

court will grant in part the motion of defendant Prudential for summary judgment.

## I. STATEMENT OF FACTS

On May 9, 1986, plaintiff was involved in an automobile accident in which she sustained a right frontoparietal head injury and a fracture of her left ankle. She also injured her right shoulder and ribs. While Bass was receiving treatment at Humana Hospital for the above injuries, her treating physician, Claude Kenyon, M.D. (hereinafter "Dr. Kenyon"), learned that she had contracted diabetes mellitus.[1] Dr. Kenyon reported that his examination of plaintiff on August 26, 1986, revealed that "her weight had dropped ... she had [contracted] diabetes." Dr. Kenyon added that there were no signs at previous examinations that his patient was diabetic. Plaintiff's doctor controlled Bass' blood sugar level by administering oral diabetic agents.

In August of 1986, plaintiff reported that she felt relatively well and did not want further treatment for diabetes, but several days later her blood sugar was high and Dr. Kenyon asked her to continue taking the diabetic medication. On September 3, 1986, plaintiff again entered the hospital. Dean Reeves, M.D. (hereinafter "Dr. Reeves"), discovered that Bass "had decreased circulation to the hands of unclear etiology perhaps microembolic during that time." Plaintiff's hands were amputated on October 16, 1986. In October of 1988, Bass filed a claim for dismemberment benefits. Plaintiff claimed that she incurred trauma and stress which caused her to develop Type II diabetes mellitus as a direct result of the automobile accident.

After Bass submitted her claim form and enclosures, Prudential hired Michael H. Koch, M.D. (hereinafter "Dr. Koch"), an endocrinologist, to determine whether there was a causal relationship between plaintiff's diabetes or amputations and the automobile accident. Defendant's consulting physician could only rely on his "intuition" in deciding whether diabetes was the cause of plaintiff's loss of limbs, because the medical records sent to him by Prudential contained inadequate information. Dr. Koch noted that it "is possible for trauma to cause diabetes," but opined that Bass had contracted a different type of diabetes that "does not come about acutely."

Prudential denied Bass' claim for benefits. A letter sent by the insurance company to the claimant informing her of the denial stated that its decision was based largely on Dr. Koch's opinion. Prudential stated that plaintiff's accident of May 9, 1986, cannot be considered the cause of the diabetes because "Bass suffered from non-insulin dependent diabetes which does not come about acutely ..." Defendant added that "Dr. Koch was not able to reach a definitive conclusion in regard to the cause of the loss of Mrs. Bass' hands, other than it did not occur as the direct result of injuries received in [the] automobile accident." Plaintiff was also advised of defendant's appeal procedure. Prudential offered to "review any additional evidence [Bass] submit[ted] as well as consider any points [she] might wish to make a part of [an] appeal."

## II. SUMMARY JUDGMENT STANDARDS

In considering a motion for summary judgment, the court must examine all the evidence in a light most favorable to the nonmoving party. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir. 1981); *Mahomes–Vinson v. United States*, 751 F.Supp. 913, 916 (D.Kan.1990). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R. Civ.P. 56(c); *Maughan v. S.W. Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985); *see also* 6 J. Moore, *Moore's Federal Practice* ¶ 56.04 (1990) (court is authorized to examine materials outside complaint to determine whether there is genuine issue of

---

**1.** Diabetes is defined as a deficiency condition marked by the habitual discharge of an excessive quantity of urine. *Dorland's Illustrated Medical Dictionary* 410 (24th ed.1965). Diabetes mellitus is a metabolic disorder in which the ability to oxidize carbohydrates is more or less completely lost, usually due to faulty pancreatic activity. *Id.* at 410–11.

material fact to be tried). If the moving party does not bear the burden of proof, he must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). This burden is met when the moving party identifies those portions of the record which demonstrate the absence of material fact. *Id.* at 323, 106 S.Ct. at 2552; *Deines v. Vermeer Mfg. Co.*, 752 F.Supp. 989, 993 (D.Kan.1990).

Once the moving party meets these requirements, the burden shifts to the party resisting the motion, who "must set forth *specific facts* showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (emphasis added). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleading." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511; *Tersiner v. Union Pac. R.R. Co.*, 740 F.Supp. 1519, 1522–23 (D.Kan.1990).

## III. STANDARD OF REVIEW

■ Prudential contends that it is entitled to absolute deference of review in light of the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Plaintiff points out that defendant has a conflict of interest and therefore argues that the court should apply a *de novo* standard of review. A denial of benefits under an ERISA plan challenged under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), must be reviewed *de novo* unless the benefit plan expressly gives the administrator or fiduciary discretion to interpret the terms of eligibility of the plan, in which case an "arbitrary and capricious" standard is appropriate. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. at 115, 109

S.Ct. at 956; *Davidson v. St. Francis Regional Medical Center Employee Group Health Plan*, 715 F.Supp. 1038, 1039 (D.Kan.1989); *Kelley v. Am. Tel. & Tel. Co.*, 715 F.Supp. 1036, 1037 (D.Kan.1989).[2] However, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. at 115, 109 S.Ct. at 956 (citing *Restatement (Second) of Trusts* § 187, Comment *d* (1959)); *Dytrt v. Mountain State Tel. & Tel. Co.*, 921 F.2d 889, 894 (9th Cir.1990); *Kotrosits v. Gatx Corp. Non–Contributory Pension Plan*, 757 F.Supp. 1434, 1454 (E.D.Pa.1991).

■ Thus, the initial determination to be reached is whether the plan provides Prudential with discretion to determine eligibility for benefits, and secondly, if it does give discretionary authority, whether defendant is operating under a conflict of interest. The terms of the employee benefit plan must give the administrator the discretionary power to determine eligibility for benefits "in specific words" in order to escape *de novo* review. *Nunez v. Louisiana Benefit Comm.*, 757 F.Supp. 726, 731 (E.D.La.1991) (citing Ostrich, *ERISA Litigation: What to do about Standard of Review*, Louisiana Bar Journal (Feb.1991)). In the instant case, the J.C. Penney Plan states in pertinent part that "the insurance company providing the coverage ... will make all final interpretations or rulings on the rights of plan participants." We find that this language provides Prudential with discretion to interpret the terms of eligibility of the plan.

■ The court must now decide whether the defendant insurance company had a conflict of interest when it denied benefits to plaintiff. Since "an insurance company pays out beneficiaries from its own assets rather than the assets of a trust, its fiduci-

---

**2.** Section 502(a)(1)(B) of ERISA provides that a civil action may be brought by a participant or beneficiary "to recover benefits due him under the terms of his plan, to enforce his rights under

the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

ary role lies in perpetual conflict with its profit making role as a business." *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir.1991); *Newell v. Prudential Ins. Co. of America*, 904 F.2d 644, 650 (11th Cir.1990). When an insurance company serves as an ERISA fiduciary to a plan composed of a policy issued by that company, it "is exercising discretion over a situation for which it incurs 'direct, immediate expense as a result of benefit determinations favorable to the [p]lan participants.'" *Brown v. Blue Cross & Blue Shield of Ala., Inc.*, 898 F.2d 1556, 1561–62 (11th Cir.1990) (quoting *DeNobel v. Vitro Corp.*, 885 F.2d 1180, 1191 (4th Cir.1989)), *cert. denied*, —— U.S. ——, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991).

We conclude, as has the Eleventh Circuit, that a "strong conflict of interests [exists] when the fiduciary making a discretionary decision is also the insurance company responsible for paying the claims." *See Anderson v. Blue Cross & Blue Shield of Ala.*, 907 F.2d 1072, 1076 (11th Cir.1990); *Newell v. Prudential Ins. Co. of Am., supra*, 904 F.2d at 650–51; *Brown v. Blue Cross & Blue Shield of Ala., supra*, 898 F.2d at 1561. The inherent conflict between the fiduciary role and the profit-making objective of an insurance company makes the simple "arbitrary and capricious" standard inappropriate. *Newell v. Prudential Ins. Co. of Am., supra*, 904 F.2d at 650; *Brown v. Blue Cross & Blue Shield of Ala., Inc., supra*, 898 F.2d at 1562.

The Eleventh Circuit has crafted a "new, more stringent standard of review" when a conflict of interest has been shown to exist, "placing the burden on the fiduciary to 'prove that its interpretation of the plan provisions committed to its discretion was not tainted by self-interest' and to show that it operated 'exclusively in the interests of the plan participants and beneficiaries.'"

*Anderson v. Blue Cross & Blue Shield of Ala., supra*, 907 F.2d at 1076; *Newell v. Prudential Ins. Co. of Am., supra*, 904 F.2d at 651.[3] Under this more penetrating standard of heightened scrutiny, a "wrong but apparently reasonable interpretation" will be held to be arbitrary and capricious "if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary." *Anderson v. Blue Cross & Blue Shield of Ala., supra*, 907 F.2d at 1076; *Brown v. Blue Cross & Blue Shield of Ala., Inc., supra*, 898 F.2d at 1566–67.

## IV. CAUSE OF DIABETES

■ Plaintiff alleges that she "incurred trauma and stress which caused her to develop Type II diabetes mellitus" as a "direct result" of the automobile accident on May 9, 1986. She claims that the diabetic disease "caused the resultant infection and ultimate amputation of both her upper extremities" on October 16, 1986. The J.C. Penney Plan states that "dismemberment benefits are payable only if a loss results directly from injuries received in an accident." The plan also provides that "benefits will not be paid for any loss caused by physical or mental illness or disease, or medical or surgical treatment relating to such illness."

In denying Bass' claim, Prudential relied heavily on a July 28, 1989, letter drafted by its medical expert, Dr. Koch. Dr. Koch conceded that "[i]t is possible for trauma to cause diabetes." He added that the information sent to him by Prudential was inadequate to determine whether plaintiff's loss of limb was caused by diabetes. Without adequate hospital records, Dr. Koch was left with nothing more than his "intuition" to venture what Bass' medical condition was in 1986. In light of defendant's burden to establish that its determination of ineligibility was not tainted by self-interest, Dr. Koch's opinion is woefully inadequate

---

**3.** The court should engage in "more penetrating" scrutiny when there is "greater ... suspicion of partiality." *Lowry v. Bankers Life & Casualty Retirement Plan*, 871 F.2d 522, 525 n. 6 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 152, 107 L.Ed.2d 111 (1989); *see also Van Boxel v. Journal Co. Employees' Pension Trust*, 836 F.2d 1048, 1052–53 (7th Cir.1987) (Posner, J.) (arbitrary and capricious standard must be adjusted when there is possible bias); *Dockray v. Phelps Dodge Corp.*, 801 F.2d 1149, 1152 (9th Cir.1986) (less deference afforded to administrator when there is conflict between interests of employer and fund beneficiaries).

to support the rejection of plaintiff's claim. Further, there is no indication that the denial of Bass' claim operated in the interests of the plan participants and beneficiaries. Accordingly, the court will deny defendant's summary judgment motion as to accidental dismemberment benefits.

## V. DUTY TO PROVIDE PLAN INFORMATION

■ Plaintiff contends in count II of her amended complaint that Prudential failed to comply with her requests for information regarding the J.C. Penney plan. Section 502(c)(1) of ERISA imposes a duty on the *administrator* of an employee benefit plan to furnish information concerning the plan to claimants:

> Any *administrator* ... who fails or refuses to comply with a request for any information which such *administrator* is required by [ERISA] to furnish to a participant or beneficiary ... may in the court's discretion be personally liable to such participant or beneficiary in the amount up to $100 a day from the date of such failure or refusal ...

29 U.S.C. § 1132(c)(1) (emphasis added). While Prudential processed Bass' claim and ultimately decided to deny benefits to the claimant, this defendant, as plaintiff concedes, was not the administrator of the J.C. Penney plan.[4] The court is precluded from extending liability under section 1132(c) to persons that were not expressly identified by Congress. *See, e.g., Moran v. Aetna Life Ins. Co.*, 872 F.2d 296, 299–300 (9th Cir.1989) (liability under § 1132(c) is limited to those targets named by Congress); *Coleman v. Nationwide Life Ins. Co.*, 748

F.Supp. 429, 432 n. 1 (E.D.Va.1990) (defendant was not administrator and therefore not liable for failure to provide summary plan description); *Lee v. Prudential Ins. Co. of Am.*, 673 F.Supp. 998, 1004–05 (N.D. Cal.1987) (absent allegations that fiduciary's employee was "administrator," claimant could not recover civil penalty from employee for failing to furnish plan information).[5] We will grant the motion of defendant for summary judgment as to plaintiff's allegations that Prudential violated ERISA §§ 104 and 502.

■ Bass also alleges that Prudential failed to comply with ERISA § 503, 29 U.S.C. § 1133. Section 503 sets forth the procedure for processing a claim for benefits under a plan governed by ERISA:

> In accordance with regulations of the Secretary, every employee benefit plan shall—
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. Regulations promulgated by the Secretary of Labor make section 503 applicable to insurance companies that process claims for benefits under employee benefit plans. *See* 29 C.F.R. § 2560.503–1(c) and (f).[6]

---

**4.** The "administrator" is "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A)(i). The J.C. Penney Company is designated on page twenty-nine of the plan in question with the "[r]esponsibility for administering the ... Accidental Death and Dismemberment Insurance Plan."

**5.** Plaintiff also alleges that Prudential violated ERISA § 104, 29 U.S.C. § 1024. Section 104 of ERISA requires the administrator to provide plan participants and beneficiaries with a copy of the summary plan description, all modifications of the plan, and a statement of rights. 29 U.S.C. § 1024. However, as noted above, the

administrator of the plan in the instant case is not Prudential, but the J.C. Penney Company. Defendant's summary judgment motion as to plaintiff's claim against Prudential on ground that the insurance company violated § 104 will likewise be denied.

**6.** Subsections (c) and (f) of 29 C.F.R. § 2560.503–1 require insurance companies that furnish benefits under employee benefit plans to "provide to every claimant who is denied a claim for benefits written notice setting forth" the information that must be produced pursuant to 29 U.S.C. § 1133.

In the present case, Prudential sent a letter to Bass stating that her claim had been denied "because diabetes caused or at least contributed to cause [the] loss" of her hands.[7] The insurance company added that plaintiff "does not come within the description of benefits covered" by the plan. The letter also referred to the pertinent plan provisions which Prudential based its denial of benefits. Further, Prudential directed the claimant to the appropriate pages of the summary plan description, in which the appeals procedure was explained, and offered to "review any additional evidence [she] might submit as well as consider any points [she] might wish to make as part of that appeal." We find that Prudential has complied with ERISA § 503. The court will grant defendant's summary judgment motion as to Prudential's alleged failure to provide adequate notice and afford a reasonable opportunity for a full and fair review.

IT IS THEREFORE ORDERED that the motion of defendant Prudential Insurance Company of America for summary judgment (Doc.No. 74) is hereby granted as to its alleged failure to furnish plan information and notice of plaintiff Bass' opportunity for review.

IT IS FURTHER ORDERED that the summary judgment motion of Prudential Insurance Company of America (Doc.No. 74), as to plaintiff Bass' claim for accidental dismemberment benefits, is denied.

---

**7.** We find that Prudential's notification letter was "written in a manner calculated to be understood by the participant."