**Edith L. KARL**

v.

**The GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, et al.**

**Civ. No. JFM–91–2776.**

United States District Court,
D. Maryland.

April 30, 1992.

Herbert Alan Dubin, Silver Spring, Md., for Edith L. Karl.

Gary Bruce Eidelman, Semmes, Bowen & Semmes, Kenneth Thompson, Baltimore, Md., for Guardian Life Insurance Company of America, et al.

## OPINION

MOTZ, District Judge.

Edith L. Karl, the widow of Norman J. Karl, has instituted this action under ERISA, 29 U.S.C. § 1022 et seq., seeking to recover benefits under an insurance policy on the life of Dr. Karl. Defendants are Metropolitan Psychiatric Group ("Metropolitan"), which had employed Dr. Karl and The Guardian Life Insurance Company of America ("Guardian"), which had issued a group life insurance policy for the benefit of Metropolitan's employees.

## I.

▮ Guardian has already paid $150,000.00 to Mrs. Karl. The question here presented is whether she is entitled to an additional $100,000.00. This question turns upon interpretation of certain provisions in the Plan Summary Booklet of the insurance policy issued by Guardian.[1] Under the terms of the Plan (stated both in the Plan Summary Booklet and in the master insurance policy) Guardian has "discretionary authority to determine eligibility for benefits and to construe the terms of the Plan with respect to claims." Therefore, Guardian's decision to deny plaintiff's claim for an additional $100,000 in benefits must be affirmed unless Guardian has abused its discretion in interpreting the governing provisions of the Plan. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *de Nobel v. Vitro Corp.*, 885 F.2d 1180 (4th Cir. 1989).[2]

The first portions of the Plan Summary Booklet relevant to this case appear at pages 19–20 of the Booklet. They state as follows:

### Part I

**Employee Basic Term Life**

200% of the employee's annual earnings, rounded to the next higher $1,000.00, if not already a multiple thereof, to a maximum of $250,000.00

**Employee Supplemental Term Life**

200% of the employee's annual earnings, rounded to the next higher $1,000.00, if not already a multiple thereof, to a maximum of $350,000.00.

This amount shall be reduced by the amount payable under the employee's Basic Term Life Insurance.

**Employee Accidental Death and Dismemberment**

200% of the employee's annual earnings, rounded to the next higher $1,000.00, if

---

**1.** The language in the insurance policy itself supports defendants' position. However, if there was a conflict between the language of a master policy and the language of the summary plan description, it is the latter which governs. *See, e.g., McKnight v. Southern Life and Health Ins. Co.*, 758 F.2d 1566, 1570 (11th Cir.1985).

**2.** Plaintiff argues that because Guardian is operating under a conflict of interest (both making the benefits decision and having to pay the increased benefits if the decision is in favor of plaintiff), its decision should be reviewed *de novo*. This contention is incorrect as a matter of law. The standard of review is not modified by virtue of the existence of a conflict of interest; rather, the conflict of interest is a factor which the court should take into account in reviewing the decision by whatever standard is otherwise applicable. *See, e.g., Firestone Tire & Rubber Co.*, 489 U.S. at 115, 109 S.Ct. at 956. Here, I have taken Guardian's dual role as fiduciary and insurer into account in making my determination that it has not abused its discretion.

not already a multiple thereof, to a maximum of $350,000.00.

\* \* \* \* \* \*

The amount of an employee's supplemental term life insurance under this plan is the scheduled amount less any amount the employee converts under the section "Converting While Still Insured". When the applicable age reduction formula(s) shown above are applied to an employee's supplemental term life insurance, the calculation will be based on such adjusted amount.

No employee shall become insured for any amount of insurance under this schedule in excess of $150,000.00 unless he gives us proof that he is insurable and we approve that proof in writing.

Even though an employee may be eligible for Employee Supplemental Term Life Insurance, he won't become insured for such insurance unless he gives us proof that he is insurable and we approve that proof in writing. No increase in an employee's Supplemental Term Life amount shall become effective unless the employee gives us additional proof in writing.

The effective date for any amount of insurance for which the employee gives us proof that he is insurable shall be the date we approve that proof in writing, provided the employee is actively at work on a full-time basis on that date. Otherwise, such insurance shall take effect on the date the employee resumes active full-time work.

In no event shall an employee's Accidental Death and Dismemberment amount exceed his Basic Term Life amount, unless the employee has been approved for Employee Supplemental Term Life.

The other relevant provisions appear on page 24 of the Booklet. They state as follows:

### YOUR GROUP TERM LIFE INSURANCE

**Basic Life Benefit:** If you die while insured for this benefit, we'll pay your beneficiary the amount shown in the schedule.

**Supplemental Life Benefit:** In addition to your basic life benefit, you may apply for a supplemental life benefit.

To apply, you must give us proof that you're insurable. You won't be insured until we approve that proof and place you in a risk and rate class. Where you're placed depends on our underwriting rules. You won't get this benefit if we decide you're not insurable.

Subject to the Suicide Exclusion, if you die while insured for this benefit, we'll pay your beneficiary the amount shown in the schedule.

Prior to May 1, 1990, the maximum basic life insurance benefit was $150,000.00. As of May 1, 1990, this maximum was increased to $250,000.00 for persons who made $125,000.00 or more.[3] Dr. Karl's salary exceeded that amount at the time of his death (as well as at any other arguably relevant time).

■ In denying plaintiff's claim Guardian relied upon the provision appearing on page 20 of the Plan Summary Booklet that "no employee shall become insured for any amount of insurance under the schedule in excess of $150,000.00 unless he gives us proof that he is insurable and we approve that proof in writing." Plaintiff first argues that this provision is not controlling because it applies only to the policy's accidental death and dismemberment coverage. This argument is plainly wrong. By its terms the provision in question applies to "any amount of insurance under this schedule in excess of $150,000.00." "This schedule" includes the schedule of life insurance benefits, not merely accidental death and dismemberment benefits. Moreover, the

---

**3.** Metropolitan advised its clinical staff (including Dr. Karl) of the changes in the Guardian policy by a memorandum dated May 17, 1990. This memorandum was accompanied by a "brief summary," prepared by Metropolitan, of the new insurance benefits. This summary referred to the increase to $250,000.00 in the max-

imum basic life insurance benefit but did not state that employees would have to present new evidence of insurability. However, Guardian's Plan Summary Booklet was also apparently distributed ·with the May 17th memorandum. Plaintiff does not deny that Dr. Karl received this Booklet.

**572**

provision appears between two paragraphs discussing life insurance coverage.

Plaintiff next argues that the provision appearing on page 20 of the Booklet is overridden as to basic life coverage by the provisions appearing on page 24 which require that proof of insurability be presented by an employee for the purpose of obtaining a supplemental life benefit (in contrast to the basic life benefit). In support of this argument plaintiff relies upon the doctrine that insurance policies are to be construed against the insurer. To the extent that this doctrine is a rigid one, its viability in the ERISA context is subject to question in light of the deference which *Firestone* and *de Nobel* require that courts give to ERISA fiduciaries who are vested with discretion under the terms of the plan. However, assuming that the doctrine does apply here, *see Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 540 (9th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990), it does not dictate the result which plaintiff desires. Perhaps the provisions on page 24 of the Booklet upon which plaintiff relies might be said to suggest by negative implication that proof of insurability is required only for a supplemental life benefit and not for a basic life benefit. However, the basic life benefit clause appearing on page 24 refers back to "the amount shown in the schedule," and "the schedule" appearing on page 20 includes the explicit requirement that proof of insurability be presented for coverage for any amount of insurance in excess of $150,000.00. Under these circumstances there simply is no ambiguous or inconsistent provision to be construed against the

insurer. The alleged negative implication is itself negated by another express term of the Plan. Therefore, the clause on page 24 requiring that proof of insurability be presented for obtaining a supplemental life benefit is, at most, a mere redundancy.[4]

## II.

■ Plaintiff has submitted affidavits stating that Dr. Karl had told her and his brother-in-law that he believed that his employee life insurance benefit was $250,000.00, not $150,000.00, and that he did not have to pass any physical exam in order to qualify for that benefit. I have no reason to question the veracity of those affidavits. However, Dr. Karl's subjective belief and expectation does not entitle plaintiff to relief, and judgment must be entered in favor of defendant.[5]

---

**4.** In fact, under some circumstances it appears that the clause on page 24 is not redundant. For example, if an employee had annual earnings of $37,000.00, his supplemental life benefit under the schedule would only be $74,000.00 (200% of his annual earnings). This would not be enough to trigger the requirement imposed on page 20 of the Booklet requiring that he present evidence of insurability since the supplemental life benefit is less than $150,000.00. Nevertheless, in order to be eligible for the supplemental life benefit, he would have to present evidence of insurability under the express requirement appearing on page 24 of the Booklet. (I have used the assumed annual earnings figure of $37,000.00 in case the provision appearing on page 20 of the Booklet were to be

interpreted as applying the $150,000.00 limit to the sum of the basic life benefit and the supplemental life benefit. If it were not so interpreted, my hypothetical would extend to any employee earning up to $74,000.00 per year).

**5.** It should finally be noted that even if Guardian were liable, Metropolitan would not be. It was not the insurer under the policy and did not make the decision to deny plaintiff benefits. The fact that it processed paperwork, submitted claims for employees or communicated benefits information to the employees is not sufficient to render it liable under ERISA. *See Chambers v. Kaleidoscope, Inc. Profit Sharing Plan and Trust*, 650 F.Supp. 359, 376 (N.D.Ga.1986).