635 So.2d 579 (1994)
Penny Bertrand, Widowed Wife of Otis W. BERTRAND, Plaintiff-Appellant,
v.
METROPOLITAN LIFE INSURANCE COMPANY and WHC Inc., Defendants-Appellees.
No. 93-1123.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1994.
*580 Ted A. Landry, Michael J. Remondet Jr., Lafayette, for Penny Bertrand, widowed wife of Otis W. Bertrand.
Kyle Liney Mark Gideon, Lafayette, Alvin Pasternak, Sherry S. Laird, New York City, for Metropolitan Life Ins. Co., et al.
Frederick Douglas Gatz Jr., Jennifer Elmer Beyer, Lafayette, for WHC, Inc.
Before YELVERTON, SAUNDERS and DECUIR, JJ.
YELVERTON, Judge.
This appeal arises out of the granting of a motion for summary judgment. Penny Bertrand filed suit pursuant to 29 U.S.C.A. 1001, et seq., the Employee Retirement Income Security Act (ERISA), to collect life insurance benefits under an Employee Benefit Plan made available by her late husband's employer, WHC, Inc. The insurer was Metropolitan Life Insurance Company. Mrs. Bertrand claims she is entitled to $15,000 under the Plan as the result of the death of her husband in a car accident on December 16, 1990.
The trial court granted WHC's and Metropolitan's motions for summary judgment and dismissed Bertrand's claim. Bertrand appeals. We affirm.

SUMMARY JUDGMENT
Appellate courts review summary judgments de novo under the same criteria that govern district courts' consideration of whether summary judgment is appropriate. A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966. Because the mover has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained in the material before the court must be viewed in the light most favorable to the party opposing the motion. The party who defends against the motion for summary judgment must have his properly filed allegations taken as true and must receive the benefit of the doubt when his assertions conflict with those of the movant. Schroeder v. Board of Sup'rs, 591 So.2d 342, 345 (La.1991). Therefore, we will make a de novo review of the denial of benefits by the trial court.
Additionally, a denial of benefits challenged under ERISA must be reviewed de novo unless the benefit plan expressly gives the administrator or fiduciary discretion to interpret terms of the eligibility of the *581 plan, in which case the "arbitrary and capricious" standard of review is appropriate. However, if the benefit plan gives discretion to the administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); Bass v. Prudential Ins. Co. of America, 764 F.Supp. 1436, 1439 (D.Kan.1991).
Metropolitan is the claim administrator. After a review of the Plan document, we find that the Plan does not provide Metropolitan with the discretion to determine eligibility for benefits. The terms of the employee benefit plan must give the administrator the discretionary power to determine eligibility for benefits "in specific words" in order to escape de novo review. Nunez v. Louisiana Benefit Comm., 757 F.Supp. 726, 731 (E.D.La.1991). Therefore, ERISA also requires that the review be de novo.
The basic premise of the motion for summary judgment was that Otis Bertrand never enrolled in the Plan, and that his widow was therefore not eligible for benefits for his death.
Mrs. Bertrand claims that she is entitled to the accidental death benefits for two reasons. First, she claims that neither she nor her husband ever received any documentation regarding enrollment in the Employee Benefit Plan and that it was Metropolitan's duty to make sure her husband was properly enrolled in the Plan. Secondly, Mrs. Bertrand claims that the Plan document does not require that an employee submit an employee enrollment form in order to be covered.
Addressing the first issue of a failure to supply information on the employee benefit plan, 29 U.S.C.A. 1132 permits the beneficiary the right to bring a civil action for an administrator's refusal to supply requested information and to recover benefits due under the terms of the plan. 29 U.S.C.A. 1132(c) provides for penalties for the administrator's refusal to supply requested information. An insurance company that was the employee benefit plan fiduciary and that was also responsible for paying claims, but that was not the plan administrator, was not subject to liability under ERISA for failing or refusing to comply with a request for plan information. The duty to provide plan information was placed on the Plan administrator. Bass v. Prudential Ins. Co. of America, 764 F.Supp. 1436 (D.Kan.1991).
In this case WHC was designated as the Plan administrator. Metropolitan was the claim administrator. Therefore, Metropolitan can have no liability for failure to give Mr. Bertrand any information since it only administers the claims.
However, Mrs. Bertrand is not claiming her husband did not receive requested information, she is claiming he never received any information with regard to enrollment in the Plan. Only WHC could still be held responsible for failure to give information on the Plan since it was the Plan administrator.
The record shows indisputably that Mr. Bertrand received information on the Employee Benefit Plan. An employee enrollment form was submitted to Metropolitan after Mr. Bertrand's death. Mrs. Bertrand admitted that her husband's signature was forged on the employee enrollment form and placed there after his death. Mrs. Bertrand admitted that the signature was placed on the document as acknowledgment of reading the document. What purports to be Mrs. Bertrand's signature as a witness to her husband's signature also appears on the document. The document was predated to before Mr. Bertrand's death, but was actually executed three days after his death. This form is in the plan packet as an employee enrollment form for new, eligible employees applying for any coverage offered by the insurance Company.
Obviously, Mr. Bertrand had an employee enrollment form so one can only conclude that he did receive information on the Employee Benefit Plan. In fact, Mrs. Bertrand went so far as to admit that they knew about the Employee Benefit Plan and relied upon it in not procuring other benefits. Therefore, the summary judgment evidence establishes that Mr. Bertrand had received information on the Plan.
*582 Mrs. Bertrand next contends that it was error to grant summary judgment because the plan document does not indicate that if the employee does not provide the information then he will not be covered. Metropolitan as the claim administrator denied benefits to Mrs. Bertrand for accidental death because it found her husband was not covered. The question of whether Mrs. Bertrand is entitled to the $15,000 of life insurance provided by the Employee Benefit Plan turns upon interpretation of certain provisions in the Plan document.
Mr. Bertrand was employed with WHC on August 1, 1990. He became eligible to participate in the Plan when he had been employed for three months. It is undisputed that the only employee enrollment form submitted on behalf of Mr. Bertrand was not signed by him and that his name was placed on the document after his death.
The provisions in the plan document which are pertinent to this case read as follows:
B. EFFECTIVE DATES OF INSURANCE
An Employee may become insured for the insurance after providing Metropolitan with:
(a) a completed enrollment form; and
(b) if required, evidence of good health satisfactory to us.
Mrs. Bertrand would have us interpret this language as ambiguous. She claims that there is nothing in the language of the policy which would require an employee to submit an enrollment form before an employee is covered. We disagree. The language is quite clear that before an employee may become insured, he must submit a completed enrollment form, and if required, evidence of good health. Not only is the effective date of the insurance controlled by these requirements, but also the use of the word "may" contemplates that an employee may still not receive coverage even after a complete enrollment form is filed.
This is also obvious when read with other provisions in the contract. For example, "[i]f evidence of good health of the Employee is not accepted as satisfactory by Metropolitan, Personal Insurance will not be provided for the Employee." Also, "Metropolitan will furnish certificates to the Employer for delivery to each Employee who is insured."
Under the Underwriting Process heading in the employee enrollment form packet given to new, eligible employees, the following is found:

The Underwriting Process
Thank you for applying to Metropolitan for your insurance.
We will carefully evaluate your request for coverage. We first review all of the information you have furnished. We may confirm or add to this information in the ways described in this notice. All applications are processed in a fair way.
We will tell you if we cannot give you the coverage you have asked for or if we can only provide it on a modified basis. We will tell you, in general terms, of the reason for our decision. Upon written request, more specific reasons will be given to you.
This language says that not all employees are entitled to coverage.
In Karl v. Guardian Life Ins. Co. of America, 790 F.Supp. 569 (D.Md.1992), the court found that the insured had not provided the required presentation of proof of insurability referred to in the plan summary booklet and was not entitled to supplemental life benefits. In that case, as here, the plaintiff argued that the provision was ambiguous.
We reach the same result in this case. The policy provision requiring the employee enrollment form and proof of good health is not ambiguous. This is especially true when construed with the other provisions in the policy. It is clear that before an employee can become eligible for insurance under the Plan, he must submit the employee enrollment form and evidence of good health. If accepted, a certificate showing the employee is insured and what type of insurance he had will be issued.
In this case the only employee enrollment form submitted on behalf of Mr. Bertrand was the admittedly forged document. Mr. Bertrand failed to enroll in the employee benefit plan and Mrs. Bertrand is not entitled *583 to the accidental death benefits under the plan. The summary judgment is affirmed.
Costs of this appeal are assessed to plaintiff/appellant, Penny Bertrand.
AFFIRMED.
SAUNDERS, Judge, dissenting.
Plaintiff points out that the administrative manual indicates "[w]hen it is apparent that an employee will become eligible, your Metropolitan Life Insurance Company sales representative should be contacted so that the new employee will be promptly and properly enrolled." Plaintiff argues that this language places the burden of enrolling or not enrolling Mr. Bertrand on Metropolitan.
Plaintiff also points out that the WHC, Inc. summary plan labeled as "Exhibit C" indicates that "As you know, WHC, Inc. provides its employees with a group hospitalization insurance as an employee benefit. The cost of the employee's insurance is paid by WHC, Inc. together with $15,000 of life insurance."
Mrs. Bertrand's affidavit indicates that she and her husband relied on this statement concerning the life insurance and decided not to pursue any other life insurance benefits. These documents suggests issues of fact as to whether Metropolitan or its agent led the Bertrand's to believe that they were insured or to believe that Metropolitan would contact them and undertake to promptly and properly enroll them.
Accordingly, I would not sustain the summary judgment as there are issues which have not been resolved.