725 So.2d 85 (1998)
Edward W. READ, et al., Plaintiffs-Appellants,
v.
STATE FARM FIRE & CASUALTY INS. CO., et al., Defendants-Appellees.
No. 98-720.
Court of Appeal of Louisiana, Third Circuit.
December 23, 1998.
*86 Howard N. Nugent, Jr. and D. Reardon Stanford, Alexandria, for Edward W. Read, et al.
Ronald E. Corkern, Jr., Natchitoches, for State Farm Fire & Casualty Ins. Co., et al.
Thomas Taylor Townsend, Natchitoches, for Carson Attaway.
Before DOUCET, C.J., and YELVERTON and AMY, Judges.
AMY, Judge.
In this appeal from the trial court's grant of a sheriff's motion for summary judgment, the plaintiffs contend that the trial court erred in refusing to consider, in ruling upon that motion, an expert witness' affidavit. Additionally, the plaintiffs urge that the trial court erroneously granted the motion for summary judgment. For the following reasons, we affirm both the trial court's determination regarding the affidavit and the grant of summary judgment.

Factual and Procedural History
This appeal involves the alleged liability of Natchitoches Parish Sheriff Boyd Durr for the death of Joseph H. Read, which death was caused by gunshot wounds inflicted by Natchitoches Parish Deputy Sheriff Carson Attaway. The record reveals that Mr. Attaway's daughter, Tami, had been intimately involved with Joseph Read, and Mr. Attaway's grandchild was born of this relationship. Tami and Mr. Read never married, *87 and, eventually, their relationship soured. A bitter custody battle ensued, with Joseph Read obtaining custody of Mr. Attaway's grandchild. However, there is some indication from the record that Tami had secreted the child. The record also contains allegations that Mr. Attaway knew where the child was being kept. These allegations were made by Joseph Read's attorney, Mr. Billy West, in the presence of Sheriff Durr. Additionally, Mr. West informed Mr. Attaway that charges might be filed against him if he did not disclose the child's location. In response, according to Sheriff Durr's affidavit, Mr. Attaway pointed his finger at Mr. West and told him that if charges were filed, he would "sue the hell out of him for false arrest." In his affidavit, Sheriff Durr testified that "Carson Attaway was red faced and upset at this point in time, however, [he] never made any threats to Mr. [Joseph] Read." Further, Sheriff Durr "did not consider this action to be inappropriate under the circumstances." Additionally, Sheriff Durr testified that he had never been informed that Mr. Attaway "was acting strange, violent, or irrational," nor did he have any "reason to believe that Carson Attaway would commit an act of physical violence." However, on October 9, 1994, Carson Attaway, while off-duty, shot Joseph Read with his service revolver. These gunshot wounds eventually led to the death of Mr. Read.
On October 9, 1995, Edward W. Read, Lisa R. Thompson, and Sherry R. Britt, Mr. Read's children and legal heirs, instituted this suit against Carson Attaway, Sheriff Boyd Durr, and State Farm Fire & Casualty Company, Mr. Attaway's liability insurer.[1] By amended petition, Plaintiffs allege that Sheriff Durr is liable for Joseph Read's death, in that:
[T]he proximate cause of ... [his] injuries and death ... was the negligence, strict liability, fault and/or want of skill on the part of ... [Sheriff Durr] in the following particulars:
1. Failing to investigate the emotional state and implement necessary psychological testing and counseling of his armed deputy, the defendant CARSON ATTAWAY.
2. Providing a weapon to his deputy, CARSON ATTAWAY, under such circumstances where a weapon was not needed and without adequate training in the use of such weapon.
3. Failing to order Deputy Attaway to avoid contact with Joseph H. Read, where defendant, Sheriff Boyd Durr knew or should have known such contact would lead to violence.
4. Failing to investigate defendant Carson Attaway's involvement in the breach of the Court's order with regard to the custody and visitation of Attaway's grandchild.
5. Failing to suspend Deputy Attaway and/or order the return of the service weapon at issue or in continuing to entrust Deputy Attaway with a service weapon under such circumstances where Sheriff Durr knew or should have known Deputy Attaway presented an unreasonable risk of harm to decedent, Joseph H. Read due to his emotional condition.
Thus, the plaintiffs sought to recover from Sheriff Durr for his direct negligence, or, alternatively, under a theory of vicarious liability, which would render him, as employer, liable for his employee's tortious actions.
Upon motion by Sheriff Durr, however, the trial court granted summary judgment in his favor, thereby dismissing Plaintiffs' claims against him. In support of this motion, Sheriff Durr filed into the record several exhibits, including:
1. Ruling of United States District Court, Western District of LouisianaAlexandria Division
2. Affidavit of Sheriff Durr
3. Deposition of Carson Attaway
4. Deposition of Rob Walsworth
In evaluating whether to grant the motion, the trial judge did not consider the affidavit *88 of Plaintiff's consultant, Dr. Leonard Territo, finding that he lacked personal knowledge of the case. The trial judge further stated that opinions of an expert based solely on special training or experience are not based upon personal knowledge as required by La.Code Civ.P. art. 967. In explaining his ruling, the trial judge stated that Plaintiffs had not established their negligence claim under Mart v. Hill, 505 So.2d 1120 (La.1987). He further reasoned "that there was ... [no] duty by the Sheriff to intervene ... on behalf of his employee which was involved in a[sic] admittedly emotional juvenile custody proceeding." He further stated that, "based on the affidavits filed and the information before the Court, there's nothing to show a prior history of violent or volatile behavior on behalf of Mr. Attaway. There was nothing in the record to indicate a prior misuse of firearms by Mr. Attaway."
Plaintiffs now appeal this determination and present the following assignments of error for our review:
1. The Trial Court committed manifest error in failing to consider the affidavit of Dr. Leonard Territo and the attachments thereto.
2. The Trial Court committed manifest error in granting Summary Judgment in favor of the defendant, Sheriff Boyd Durr.

Discussion
We begin our analysis of the issues presented in this appeal with the requirements for summary judgment. La.Code Civ.P. art. 966 provides, as follows:
A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law.
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to provide factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Furthermore, the appropriate standard of review regarding the trial court's grant of summary judgment is de novo, as appellate courts evaluate the propriety of summary judgment under the same criteria as that employed by the trial court. See Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94); 634 So.2d 1180; See also Bertrand v. Metropolitan Life Ins. Co., 93-1123 (La.App. 3 Cir. 4/6/94); 635 So.2d 579. The trial court's ruling regarding summary judgment is, therefore, not accorded deference on review.
*89 Admissibility of Affidavit
Regarding the admissibility of affidavits in connection with summary judgment proceedings, La.Code Civ.P. art. 967 provides, in pertinent part:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.
The personal knowledge required by La. Code Civ.P. art. 967 is that information which is obtained by the affiant through the use of his or her senses. McCoy v. State Farm Mut. Auto. Ins. Co., 95-689 (La.App. 3 Cir. 11/2/95); 664 So.2d 572. The requirement of personal knowledge has been further explained as being "`something which the witness actually saw or heard as distinguished from something he learned from some other person or source.'" Duhon v. Southern Pac. Transp. Co., 98-268, p. 11 (La.App. 3 Cir. 10/7/ 98); 720 So.2d 117 quoting Gardner v. Louisiana State Univ. Med. Center, 29,946, p. 4 (La.App. 2 Cir. 10/29/97); 702 So.2d 53, 56. Moreover, "[o]pinions or beliefs of an expert based on his or her special training and experience do not meet the requirement of personal knowledge." Ivy v. Freeland, 576 So.2d 1117 (La. App. 3 Cir.1991).
Plaintiffs contend that the trial court erred in refusing to consider Dr. Territo's opposing affidavit in connection with Sheriff Durr's motion for summary judgment, in light of the fact that Dr. Territo's "affidavit establishes him as a Professor of Criminology with extensive experience in the field of law enforcement with particular knowledge regarding the standards applicable to law enforcement officers and agencies." Plaintiffs further urge that "[t]he affidavit expressly addresses the standards and violations attributable to Sheriff Durr." Conversely, Sheriff Durr contends that "the affidavit of Mr. Territo was nothing more than his opinion on the negligence of Sheriff Durr, ... [which] was a conclusion of law that was not within the power or the province of Dr. Territo to give, but was the ultimate issue to be decided by the trial court."
Contained within Dr. Territo's affidavit is a list of sources he consulted in formulating his opinion. That list follows:
1. The Complaint.
2. Deposition of Sheriff Boyd R. Durr, February 7, 1996.
3. Testimony of Carson Attaway in the case of State of Louisiana vs. Carson C. Attaway.
4. Deposition of Carson Attaway, July 26, 1996.
5. Four photocopies of pictures of scratches, bruises, etc., Mr. Attaway reports he received during his confrontation with Mr. Read, along with a picture of the vehicle owned by Mr. Read and the vehicle owned by Mr. Attaway at the crime scene.
6. United States District Court Western District of Louisiana, Alexandria DivisionRuling.
7. United States District Court Western District of Louisiana, Alexandria DivisionJudgment.[2]
8. United States District Court Western District of Louisiana, Alexandria DivisionJudgment.
9. Affidavit provided by Bob Walsworth.[3]
10. Affidavit provided by Sheriff Boyd Durr.
Thus, it is evident from Dr. Territo's affidavit that the opinions offered by him are not based upon his personal knowledge, but, rather, stem from his training and experience. Compare with Duhon, 98-268; 720 So.2d 117 (wherein the Third Circuit found, similarly, that an affidavit was not based upon the affiant's personal knowledge.) We *90 further recognize, however, based upon our determination regarding the scope of the duty inquiry in the negligence analysis that follows, that, even if we were to consider Dr. Territo's affidavit, it would not be dispositive of the instant matter.
Correctness of Summary Judgment
In this assignment, Plaintiffs assert that the trial court improperly granted summary judgment in favor of Sheriff Durr. Plaintiffs maintain in their brief that genuine issues of material fact remain with regard to their causes of action. Reference to the petition instituting this matter reflects that Plaintiffs sought recovery for both Sheriff Durr's negligence as well as strict liability and vicarious liability.
As is obvious from a review of La.Code Civ.P. art. 966, the movant bears the burden of proving entitlement to summary judgment. As explained in La.Code Civ.P. art. 966(C)(2), the movant is not required to negate all essential elements of the opposing party's claim, but, rather, the movant must show "an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." If the opposing party does not then establish that he will be able to meet the requisite burden of proof at trial, then "there is no genuine issue of material fact." Id. Thus, in the absence of a genuine issue of material fact, summary judgment is appropriate. La.Code Civ.P. art. 966(B).
Regarding vicarious liability, La.Civ.Code art. 2320 provides, in part:
Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
....
In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.
In Roberts v. Benoit, 605 So.2d 1032 (La. 1991), the Louisiana Supreme Court discussed the propriety of the imposition of vicarious liability by reviewing the standards set forth in LeBrane v. Lewis, 292 So.2d 216 (La.1974). In LeBrane, the Louisiana Supreme Court stated that, "in Louisiana, as elsewhere, an employer (master) is liable for a tort committed by his employee (servant) if, at the time, the servant is acting ... `in the exercise of the functions in which ... employed.'" Id. at 217. In Roberts, the Court stated that "the determinative question is whether the employee's tortious conduct `was so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest.'" Id. at 1041 quoting LeBrane, 292 So.2d 216.
In applying the LeBrane standard to the instant matter, we conclude that no genuine issues of material fact remain with regard to the claim of vicarious liability. Rather, the documents filed by Sheriff Durr, the movant, reflect that the shooting occurred on a Sunday morning and that Mr. Attaway was off-duty at the time of the shooting. Furthermore, he had been offduty the entire weekend. The record also reflects that the shooting did not occur at Mr. Attaway's place of employment, but, instead, occurred near Mr. Attaway's home. Moreover, Sheriff Durr's submission indicates that the shooting was precipitated by a domestic dispute involving Mr. Attaway's daughter and grandchild and was, in no way, work-related. In consideration of the record in light of the LeBrane factors, it is apparent that the incident did not occur while Mr. Attaway was acting within the scope of his employment. See also Russell v. Noullet, 98-0816 (La.12/1/98); 721 So.2d 868. Therefore, no genuine issue of material fact exists which would allow Plaintiffs to sustain their burden of proof at trial with regard to the vicarious liability claim.[4]
*91 Plaintiffs' remaining claim, that Sheriff Durr is liable for his own negligence, also appears, upon review of the sheriff's submission, to be an appropriate matter for summary judgment. La.Civ.Code art. 2315, the fountainhead of tort liability in Louisiana, provides, in pertinent part:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
The Louisiana Supreme Court has recognized the following four-part test for determining whether a person is liable in negligence for another's damages:
(1) Was the conduct in question a cause-infact of the resulting harm?
(2) What, if any, duties were owed by the respective parties?
(3) Were the requisite duties breached?
(4) Was the risk, and the harm caused, within the scope of protection afforded by the duty breached?
Mart v. Hill, 505 So.2d 1120, 1122 (La.1987).
In Roberts, 605 So.2d 1032, 1042-1043 (emphasis added) (citations omitted), the Louisiana Supreme Court further elucidated the above test by explaining some of the factors. On original hearing, the Court stated:

Cause in fact is generally a "but for" inquiry; if the plaintiff probably would not have sustained the injuries but for the defendant's substandard conduct, such conduct is a cause in fact. Stated differently, the inquiry is "[d]id the defendant contribute to the plaintiff's harm or is the defendant a cause of the plaintiff's harm?"
An alternative method for determining cause in fact, which is generally used when multiple causes are present, is the "substantial factor" test. Under this test, cause in fact is found to exist when the defendant's conduct was a "substantial factor" in bringing about plaintiff's harm.
....

Duty is a question of law. Simply put, the inquiry is whether the plaintiff has any lawstatutory or jurisprudentialto support his claim.
The element central to our present discussion, scope of the duty, was explained by the Court as follows:
[T]he scope of the duty inquiry is ultimately a question of policy as to whether the particular risk falls within the scope of the duty.
....
In determining the limitation to be placed on liability for a defendant's substandard conducti.e., whether there is a duty-risk relationshipwe have found the proper inquiry to be how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced.... Although the ease of association encompasses the idea of foreseeability, it is not based on foreseeability alone.
Id. at 1045 (emphasis added) (citations omitted).
In applying these factors to the present case, we begin by inquiring whether Sheriff Durr owed any duty. As explained in Roberts, the duty owed by Sheriff Durr was "to exercise reasonable care" in retaining Attaway and in entrusting him with a weapon. See Roberts, 605 So.2d at 1044.
We next inquire whether the documents submitted by the defendant resolve all genuine issues of whether the risk that occurred, Mr. Attaway's shooting of Mr. Read, is encompassed within the scope of the duty owed by Sheriff Durr. As stated in Roberts, to reiterate, the pertinent question is "` whether the enunciated rule or principle of law extends to or is intended to protect this plaintiff from this type of harm arising in this manner.'" Roberts, 605 So.2d at 1044-45 quoting Crowe, The Anatomy of a Tort-Greenian, *92 as Interpreted by MaloneA Primer, 22 Loy.L.Rev. 903 (1976).
Following review of the documents, we find no issue remaining which would permit a finding that the duty owed by Sheriff Durr extended to Mr. Read in this particular instance. The submission reveals that, although Sheriff Durr permitted Mr. Attaway to carry a weapon off duty, he did not require him to do so. Sheriff Durr stated in his affidavit that "[o]nly those deputies that are issued a sheriff's vehicle are required to carry their guns off-duty," and Mr. Attaway had not been issued a vehicle. Moreover, there is no indication that Sheriff Durr had sufficient cause to foresee the incident. The documents indicate that the only knowledge Sheriff Durr had of any conflict was the discussion in his office between Mr. Attaway and Mr. West. Regarding that discussion, Sheriff Durr testified by affidavit that, although Mr. Attaway had been upset with Mr. Read's attorney, he had directed no threats toward Mr. Read. Additionally, Sheriff Durr testified that he did not find Mr. Read's behavior to be inappropriate at that time. Sheriff Durr further testified that he had not received any prior complaints regarding Mr. Attaway's alleged violent temper. Important, also, is the fact that the shooting occurred some two weeks after this incident between Mr. Attaway and Mr. West. Thus, there is no evidence indicating that Sheriff Durr owed any duty with regard to the specific harm.
The evidence discussed above satisfies the defendant's initial burden of establishing that the plaintiffs will be unable to prove that any duty owed by Sheriff Durr extended to the situation at issue. Furthermore, the plaintiffs did not, in turn, establish through their own submission that there remained a genuine issue of material fact. Accordingly, we find no error in the trial court's grant of summary judgment in favor of Sheriff Durr, as his motion for summary judgment "shows that there is no genuine issue as to material fact and that he is entitled to judgment as a matter of law."

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this proceeding are assigned to the plaintiffs, Edward W. Read, et al.
AFFIRMED.
NOTES
[1] We note that an action brought under 42 U.S.C. § 1983 was filed by Plaintiffs in federal court. However, that federal claim was dismissed. Additionally, pendent state law claims were dismissed without prejudice.
[2] Upon review of the record, Dr. Territo's reason for listing the judgment twice is unclear.
[3] His affidavit reveals that he is the Firearms Instructor for the Natchitoches Parish Sheriff's Department. We note also that the name provided in the affidavit appears as "Rob Walsworth."
[4] Although Plaintiffs initially alleged liability pursuant to both vicarious liability and strict liability theories, we do not enter into a separate analysis for strict liability, as this theory of recovery, in this case, is encompassed within our discussions of negligence and vicarious liability. We are mindful that recovery under both La.Civ.Code art 2315 and La.Civ.Code art. 2317 is generally analyzed in a similar manner. In Maxwell v. Board of Trustees for State Colleges & Univ., 96-1207 (La.App. 3 Cir. 3/19/97); 692 So.2d 641, writ denied, 97-0996 (La.App. 3 Cir. 6/13/97); 695 So.2d 987, a panel of this court recognized jurisprudence indicating that, under either theory, the plaintiff must prove as follows: "1) the thing causing the damage was in the custody of the defendant; 2) the thing contained a defect that created an unreasonable risk of harm to the plaintiff; and 3) this defective condition caused the plaintiff's injuries." However, unless the defendant is a public entity, a plaintiff need not additionally prove notice of the defect in a strict liability case as is required under a negligence theory of liability. Id.