**PUBLISH**

**UNITED STATES COURT OF APPEALS**

Filed 11/13/96

**TENTH CIRCUIT**

---

JOSEPH W. CHAMBERS,

      Plaintiff - Appellant,

  v.

FAMILY HEALTH PLAN
CORPORATION, aka Healthcare
America Plans, Inc.,

      Defendant - Appellee.

No. 95-3134

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D. Ct. No. 93-CV-1287)**

---

Kenneth L. Weltz (Michael D. Herd and Kenneth P. Leyba with him on the briefs), Curfman, Harris, Rose, Weltz, Metzger & Smith, Wichita, KS, appearing for the Appellant.

Charles E. Millsap (Lyndon W. Vix with him on the brief), Fleeson, Gooing, Coulson & Kitch, appearing for the Appellee.

---

Before PORFILLIO, TACHA, and BRORBY, Circuit Judges.

---

TACHA, Circuit Judge.

---

Joseph Chambers brought suit against Family Health Plan Corporation ("FHP") seeking judicial review of FHP's decision to deny him healthcare benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). The parties agreed to have a federal magistrate judge hear the case pursuant to 28 U.S.C. § 636(c)(1). The magistrate judge entered judgment for FHP and Chambers appeals. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## BACKGROUND

Chambers, a retired employee of the National Cooperative Refinery Association, is a beneficiary of a prepaid healthcare plan provided by FHP ("the Plan"). In February of 1990, Chambers learned that he suffered from pulmonary embolization, a condition which results in the accumulation of blood clots in the arteries to the lungs. The condition is fatal if untreated. Other than a lung transplant, the only known treatment is pulmonary thrombo-endarterectomy ("PTE"), a procedure which involves the surgical removal of blood clots from affected arteries.

After diagnosing Chambers, his doctors in Wichita advised him to undergo a PTE procedure. They recommended that Dr. Kenneth Moser at the University of California San Diego Medical Center ("UCSDMC") perform the surgery.

Chambers made a claim for health insurance benefits to FHP under the Plan to cover the cost of the PTE treatment.

FHP assigned the investigation of the Chambers's claim to Dr. Andrew Nachtigall, FHP's medical director. Dr. Nachtigall thereafter began investigating how the medical community characterized PTE. On March 9, 1990, Dr. Nachtigall notified Chambers in writing that FHP considered PTE to be an "experimental" procedure that was not covered by the Plan.

Jeff Chambers, the plaintiff's son, filed a formal grievance with FHP on behalf of his father. Because of the plaintiff's declining health, FHP accelerated the grievance process to the final step, a hearing before the board of directors of FHP ("Board"). Approximately one week before the hearing, FHP informed Chambers that he should be prepared to present his father's claim for benefits and any information regarding the experimental nature of the PTE procedure at the hearing.

On April 26, 1990, the Board conducted a thirty-minute hearing to consider Chambers's claim. Jeff Chambers told the Board that although PTE was an uncommon procedure, Dr. Moser had performed it "for years." Relying on information provided by his father's doctors, Chambers told the Board that the procedure was not experimental. Chambers also submitted information and journal articles from Dr. Moser describing the procedure. Dr. Nachtigall

presented a report on the results of his investigation. At the conclusion of the hearing, the Board told Chambers that he could submit additional information to the Board.

On May 1, 1990, the Board sent a letter to Joseph Chambers, denying insurance benefits for the PTE procedure because it was "experimental." Chambers successfully underwent PTE treatment later that month at UCSDMC. Although Chambers proceeded to submit evidence to FHP to support his claim for coverage, FHP continued to deny benefits to Chambers.

Chambers brought suit against FHP, seeking to recover the expenses he incurred in connection with the PTE procedure and for attorneys' fees. At trial, FHP filed a motion in limine to prevent the magistrate judge from considering evidence that was not in the administrative record in reviewing FHP's decision to deny Chambers benefits. The magistrate judge granted the motion and thus refused to consider any evidence presented to FHP after May 1, 1990, the date of FHP's final decision to deny coverage. The magistrate stated that if she had been able to conduct a de novo review of all the evidence, she would have found that FHP's denial of coverage was erroneous. Based only on the evidence submitted to FHP on or before May 1, 1990, the judge concluded that FHP's decision was not arbitrary and capricious.

Chambers makes four arguments on appeal. First, Chambers contends that FHP failed to follow ERISA's procedural requirements. Second, Chambers argues that the magistrate judge erred in limiting the scope of review to evidence submitted to FHP on or before May 1, 1990. Third, Chambers asserts that FHP's decision denying him health insurance benefits was arbitrary and capricious, especially in light of FHP's conflict of interest. Finally, Chambers contends the magistrate erred in failing to award him attorneys' fees.

## DISCUSSION

### I.    ERISA's Procedural Requirements

Chambers devotes a significant portion of his brief to arguing that FHP failed to follow several of ERISA's procedural requirements in denying him benefits. Specifically, Chambers alleges that FHP failed to inform him of the "specific reasons" for its denial of coverage as required by 29 U.S.C. § 1133(1) and 29 C.F.R. § 2560.503-1(f)(1). Chambers also contends that FHP failed to tell him the type of information he needed to submit to FHP to appeal its initial decision as required by 29 C.F.R. § 2560.503-1(f)(3)-(4). Chambers next maintains that FHP failed to tell him the evidence that FHP relied upon in making its decision as required by 29 C.F.R. § 2560.503-1(g)(1)(iii). Finally, Chambers argues that FHP failed to conduct a "full and fair review" of the claim by refusing to review information submitted by Chambers and by refusing to collect and

review reasonably available information from other sources as required by 29 U.S.C. § 1133(2) and 29 C.F.R. § 2560.503.1(g)(1).

As a preliminary matter, we must determine whether Chambers may properly appeal these procedural claims despite his failure to raise the claims before the magistrate judge. Although the magistrate's Memorandum and Order did not discuss his procedural claims, Chambers nevertheless argues that because the record contains "numerous references" to FHP's alleged procedural violations he adequately preserved the issue for appeal.

Chambers asserts that the complaint, pretrial order, and his trial brief refer to FHP's violations of "ERISA, 29 U.S.C. § 1001, et seq." He argues that this is a clear reference to all applicable ERISA sections and regulations, including ERISA's procedural requirements. We disagree that such a general reference is sufficient to preserve the issues for appeal.

Chambers also contends that both the complaint and pretrial order allege that FHP acted arbitrarily and capriciously to "interfere" with his rights. He maintains that such "interference" includes FHP's failure to follow ERISA procedures. We reject his contention that such broad language sufficiently raised the issue below such that it preserved his right to appeal his procedural claims.

Chambers next maintains that because he discussed FHP's procedural irregularities in his trial brief, he adequately preserved his procedural claims for

appeal. The trial brief has some general discussion about FHP's investigation of PTE, the notice given to Chambers, the reasons for denying his claim, and the disclosure of the information FHP consulted. We find, however, that these allegations were made only to show that FHP's ultimate <u>decision</u> was arbitrary and capricious, not that FHP violated any particular procedural requirement. The failure of Chambers to cite any cases or regulations upon which he now relies bolsters our conclusion.

Finally, Chambers argues that he preserved his procedural ERISA claims because his proposed findings of fact and conclusions of law requested that the magistrate judge find that FHP's "actions and failures to act" were arbitrary and capricious. We find that this conclusory language, coupled with his failure to cite any cases or regulations, fails to preserve his procedural claims for appeal.

Despite Chambers's failure to raise his procedural claims, we must determine whether we should nevertheless address the claims on appeal. "Absent compelling reasons, we do not consider arguments that were not presented to the district court." <u>Crow v. Shalala</u>, 40 F.3d 323, 324 (10th Cir. 1994). As in <u>Crow</u>, "we see no reason to deviate from the general rule" and will not adress the merits of his procedural claims. <u>Id.</u>

II.    **Scope of Review**

A.    **Requirements of Federal Rule of Appellate Procedure 3**

As a preliminary matter, FHP argues that Chambers, in appealing the magistrate judge's decision limiting the scope of review, failed to comply with the jurisdictional requirements of Federal Rule of Appellate Procedure 3, which requires that a party appealing a decision must designate the particular "judgment, order, or part thereof appealed from." FHP argues that while the trial court granted FHP's motion in limine on December 13, 1994, the plaintiff's notice of appeal refers only to the court's order on March 31, 1995. FHP contends that the notice of appeal, by referring only to the order on March 31, 1995, did not state the proper "order . . . appealed from."

On December 13, 1994, the magistrate judge granted FHP's motion in limine. After granting the motion, the judge added:

> And I would invite the parties to address this further in your proposed findings if you choose to do so. I'm not asking you to do it, but if you still want to revisit that issue, you are welcome to do so. But I have ruled on the record on the motion in limine, just as Mr. Millsap wanted me to.

The magistrate formalized her decision granting the motion in limine by filing a minute order on the docket on December 15, 1995.

Consistent with the magistrate's invitation to revisit the issue, Chambers submitted proposed findings of fact and conclusions of law that would have permitted the judge to consider evidence submitted to FHP after the date of its decision to deny Chambers benefits. Chambers argued that "[i]n light of the

foregoing realities, the court should consider the proffered testimony for it clearly establishes that FHP was arbitrary and capricious in denying coverage under the plan." The magistrate, however, rejected this argument in its Memorandum and Order dated March 31, 1995. Although the magistrate noted that FHP's motion in limine "was granted" at the conclusion of trial, the judge proceeded to examine the issue in her March 31 decision. After discussing the relevant law, the magistrate then stated: "Accordingly, FHP's motion in limine is granted; the court must base its findings and conclusions regarding the quality of FHP's decision only on evidence presented to FHP on or before May 1, 1990." (Emphasis added).

Chambers filed a notice of appeal regarding matters decided in the "Memorandum and Order dated March 31, 1995." In light of the magistrate judge's invitation to "revisit" the evidentiary issue, the plaintiff's proposed findings of fact and conclusions of law, and the magistrate's discussion and resolution of the issue in her Memorandum and Order on March 31, we hold the March 31 order was the final order disposing of the evidentiary matter. Thus, Chambers's notice of appeal complied with Rule 3.

**B.    Admissibility of Evidence**

Chambers argues that the magistrate judge abused her discretion in limiting her review of FHP's denial of benefits to the evidence presented to FHP on or

before the date of its final decision. In granting FHP's motion in limine, the magistrate judge relied on Sandoval v. Aetna Life & Casualty. Ins. Co., 967 F.2d 377 (10th Cir. 1992). In Sandoval, the plaintiff, who suffered from a physical impairment, received disability benefits under an ERISA plan. Id. at 378. During a routine claims review, the plan administrator determined that the plaintiff was no longer totally "disabled" under the plan's definition and terminated his disability benefits. Id. at 378-79. During the grievance process, the administrator asked the plaintiff to submit any additional information that he believed the administrator should consider in reviewing its decision. Id. at 379. The review committee ultimately upheld the decision to terminate the plaintiff's benefits. Id.

After filing suit, the plaintiff's psychologist found that he was totally disabled due to a psychological impairment. Id. At trial, the district court agreed that the plaintiff was totally disabled. Id. The court, however, refused to consider such evidence in determining whether the administrator's decision had been arbitrary and capricious, finding that the plaintiff had not submitted any evidence that he might be psychologically impaired during the grievance process. Id. We agreed that in determining whether the plan administrator's decision was arbitrary and capricious, the reviewing court "generally may consider only the arguments and evidence before the administrator at the time it made that decision." Id. at 380.

Most circuits have held that in reviewing decisions of plan administrators under the arbitrary and capricious standard, the reviewing court may consider only the evidence that the administrators themselves considered. See Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995) ("[A] district court's review under the arbitrary and capricious standard is limited to the administrative record."); Lee v. Blue Cross/Blue Shield, 10 F.3d 1547, 1550 (11th Cir. 1994) (requiring courts "to look only to the facts known to the administrator"); Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1471-72 (9th Cir. 1993) (fearing that examination beyond the administrative record would too easily lead to findings of abuse of discretion, defeating the goal of ERISA to resolve disputes expeditiously); Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 48 n. 8 (3d Cir. 1993) (holding that evaluations submitted after the committee's final decision cannot be considered in determining whether the decision was arbitrary and capricious); Oldenburger v. Central States Southeast & Southwest Areas Teamster Pension Fund, 934 F.2d 171, 174 (8th Cir. 1991) ("We limit our review to the evidence that was before a pension fund's board of trustees when the final decision was made."); Perry v. Simplicity Eng'g, 900 F.2d 963, 967 (6th Cir. 1990) (noting that both de novo and arbitrary and capricious standards of review do "not mandate or permit the consideration of evidence not presented to the administrator"). But see Wildbur v. ARCO Chem. Co., 974 F.2d 631, 638-42 (5th

Cir. 1992) (allowing district courts to look beyond the administrative record to review the administrator's plan interpretation, but not to review "the historical facts underlying a claim"). Nevertheless, Chambers urges us to disregard Sandoval and these other cases for three reasons.

First, Chambers relies on Wildbur in arguing that the magistrate should have considered evidence outside the administrative record in reviewing FHP's decision. In that case, the Fifth Circuit held that while a district court should evaluate an administrator's fact findings regarding the eligibility of a claimant based on the administrative record, the court may look to evidence which is not part of the administrative record in reviewing the administrator's interpretation of the plan. Wildbur, 974 F.2d at 642. Chambers argues that whether PTE was "experimental" involves interpretation of plan language. We disagree. Determining whether PTE is "experimental" is analogous to deciding whether the plaintiff in Sandoval was "disabled." Both of these turn on issues of historical fact. See Wildbur, 974 F.2d at 640 n.17 ("Like . . . Sandoval, the case turned on an issue of historical fact . . . ."). Thus, even under Wildbur, the magistrate judge did not abuse her discretion in limiting the scope of review to evidence presented to FHP on or before its final decision.

Second, Chambers argues that the magistrate judge should have considered additional evidence because of several "procedural irregularities" in the review

process.  See Vanderklok v. Provident Life & Accident Ins. Co., 956 F.2d 610, 617 (6th Cir. 1992); Masella v. Blue Cross & Blue Shield, 936 F.2d 98, 105 (2d Cir. 1991); Wolfe v. J.C. Penney Co., 710 F.2d 388, 393 (7th Cir. 1983).  As we discussed in Part I, Chambers failed to allege that FHP violated any particular procedural requirement under ERISA, and we will not address the merits of his procedural claims on appeal.  Similarly, we will not address how FHP's procedural errors, if any, affect the scope of review.  The record contains no evidence that Chambers raised this issue to the magistrate judge.  Because the magistrate did not have the opportunity to decide the impact of FHP's procedural errors on the scope of review, we decline to address the issue as well.

Finally, Chambers contends that this case involves "exceptional circumstances" which would allow the district court to review evidence not presented to the plan administrator.  Quesinberry v. Life Ins. Co. of North Am., 987 F.2d 1017, 1027 (4th Cir. 1993).  The plaintiff's reliance on Quesinberry is misplaced.  In Quesinberry, the Fourth Circuit held that a district court could consider evidence not in the administrative record when conducting a de novo review of an administrator's decision.  In contrast, as we will discuss shortly, we must review FHP's decision under an arbitrary and capricious standard.  Thus, we adhere to our holding in Sandoval and conclude that the magistrate judge did not

abuse her discretion in limiting the scope of review to evidence presented to FHP

prior to its final decision on May 1, 1990.

### III.    FHP's Decision

#### A.    Standard of Review

Although ERISA gives a plan beneficiary the right to judicial review of

benefit denials, the statute did not establish the standard of review for such

decisions.  In <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989),

the Supreme Court held that "a denial of benefits challenged under

§ 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit

plan gives the administrator or fiduciary discretionary authority to determine

eligibility for benefits or to construe the terms of the plan."

In this case, the Plan excludes from coverage "medical [or] surgical . . .

procedures . . . which in the judgment of FHP are experimental."  The Plan

expressly gives FHP discretion to determine whether to deny a claimant insurance

benefits for an "experimental" procedure.  Thus, under <u>Firestone</u>, a reviewing

court must uphold FHP's decision to deny Chambers benefits unless it was

arbitrary and capricious.[1]  Though the magistrate judge recognized that an

---

[1] We have consistently stated that we review an administrator's decision under an "arbitrary and capricious" standard, rather than an "abuse of discretion" standard, when an ERISA plan gives the administrator discretion.  <u>See, e.g.</u>, <u>Sandoval</u>, 967 F.2d at 380. Some circuit courts have recently distinguished between these two standards and have concluded that the abuse of discretion standard is more appropriate.  <u>See, e.g.</u>, <u>Morton v.</u>

arbitrary and capricious standard applied, the magistrate reasoned that she should give less deference to FHP's decision because FHP operated under a conflict of interest in deciding the plaintiff's claim. She concluded that because every Board member who decided Chambers's claim had a financial interest in FHP, a pure arbitrary and capricious standard was inappropriate. We agree and thus address exactly how such a conflict of interest affects our standard of review.

In Firestone, the Supreme Court briefly discussed the effect of a conflict of interest on the standard of review of an administrator's decision. The Court stated:

> Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'

Id. at 115 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)). Since Firestone, all of the circuit courts agree that a conflict of interest triggers a less

---

Smith, 91 F.3d 867, 870 (7th Cir. 1996) ([T]he arbitrary-and-capricious standard is appropriate when discretion is limited only by good faith. When the plan administrators have the discretion to make reasonable constructions of the terms of the plan, courts should review their interpretations for the abuse of discretion.). Most courts, however, have held that this is a "distinction without a difference." Cox v. Mid-America Dairymen, Inc., 965 F.2d 569, 572 n.3 (8th Cir. 1992); see also Canseco v. Construction Laborers Pension Trust, 93 F.3d 600, 605 (9th Cir. 1996) ("We have equated the abuse of discretion standard with 'arbitrary and capricious' review."); Wildbur v. ARCO Chemical Co., 974 F.2d 631, 635 n.7 (5th Cir. 1992) (noting only a "semantic, not a substantive, difference" between the two terms). We agree and adhere to the arbitrary and capricious standard of review.

- 15 -

deferential standard of review. The courts, however, differ over how this lesser degree of deference alters their review process.

Some circuits use a "sliding scale" approach. Under this approach, the reviewing court will always apply an arbitrary and capricious standard, but the court must decrease the level of deference given to the conflicted administrator's decision in proportion to the seriousness of the conflict. See Sullivan v. LTV Aerospace & Defense Co., 82 F.3d 1251, 1255 (2d Cir. 1996) ("[We] adhere to the arbitrary and capricious standard of review in cases turning on whether the decision was based on an alleged conflict of interest, unless the conflict affected the choice of a reasonable interpretation."); Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1474 (9th Cir. 1993) ("Because [of a conflict of interest], we therefore impose a more stringent version of the abuse of discretion standard . . . .") (internal quotations omitted); Doe v. Group Hospitalization & Medical Servs., 3 F.3d 80, 87 (4th Cir. 1993) ("In short, the fiduciary decision will be entitled to some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict."); Wildbur, 974 F.2d at 638 ("We note that the arbitrary and capricious standard may be a range, not a point. There may be in effect a sliding scale of judicial review of trustees' decisions . . . --more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion is . . . ."); Van

Boxel v. Journal Co. Employees' Pension Trust, 836 F.2d 1048, 1052-53 (7th Cir. 1987) ("[F]lexibility in the scope of judicial review need not require a proliferation of different standards of review; the arbitrary and capricious standard may be a range, not a point. There may be in effect a sliding scale of judicial review of trustees' decisions.").

Other circuits apply a "presumptively void" test. Under this approach, a decision rendered by a conflicted plan administrator is presumed to be arbitrary and capricious unless the administrator can demonstrate that either (1) under de novo review, the result reached was nevertheless "right" or (2) the decision was not made to serve the administrator's conflicting interest. As the court in Brown v. Blue Cross & Blue Shield, 898 F.2d 1556, 1566-67 (11th Cir. 1990), cert. denied, 498 U.S. 1040 (1991), explained:

> [W]hen a plan beneficiary demonstrates a substantial conflict of interest on the part of the fiduciary responsible for benefits determinations, the burden shifts to the fiduciary to prove that its interpretation of plan provisions committed to its discretion was not tainted by self-interest. That is, a wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries.

See also Atwood v. Newmont Gold Co., 45 F.3d 1317, 1323 (9th Cir. 1995) ("Where the affected beneficiary has come forward with material evidence of a violation of the administrator's fiduciary obligation, we should not defer to the

- 17 -

administrator's presumptively void decision."); Kotrosits v. GATX Corp. Non-Contributory Pension Plan for Salaried Employees, 970 F.2d 1165, 1173 (3d Cir.) ("[W]here such a party shows the kind of conflict of interest that could realistically be expected to bias the decision makers [Firestone] counsels in favor of withholding deference."), cert. denied, 506 U.S. 1021 (1992).

In Pitman v. Blue Cross & Blue Shield, 24 F.3d 118 (10th Cir. 1994), we touched upon the appropriate standard of review when a conflict of interests exists. In remanding the case, we "offered" the Fourth Circuit's view of Firestone in Doe v. Group Hospitalization & Medical Servs., 3 F.3d 80 (4th Cir. 1993). We stated:

> To the extent that Blue Cross has discretion to avoid paying claims, it thereby promotes the potential for its own profit. . . . . In short, the fiduciary decision will be entitled to some deference, but his deference with be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict.

24 F.3d at 123 (quoting Doe, 3 F.3d at 86). In purporting to "offer" the sliding scale approach to the district court on remand, however, we cited two other cases which have expressly adopted the "presumptively void" test. Id. (citing Brown, 898 F.2d at 1568, and Bass v. Prudential Ins. Co. of America, 764 F. Supp. 1436, 1440 (D. Kan. 1991)). Thus, some of the district courts in our circuit have employed the "presumptively void" test when there is a conflict of interest. See Torre v. Federated Mut. Ins. Co., 897 F. Supp. 1332, 1360-62 (D. Kan. 1995);

- 18 -

Torre v. Federated Mut. Ins. Co., 854 F. Supp. 790, 814 (D. Kan. 1994). But see Hammers v. Aetna Life Ins. Co., 925 F. Supp. 718, 722 (D. Kan. 1996) ("Deference is greatly diminished, however, when the claims administrator is acting under a conflict of interest."). In this case, the magistrate judge joined this trend by expressly adopting the presumptively void test developed by the Eleventh Circuit in Brown and used in Torre and Bass.

We reject the "presumptively void" test as inconsistent with our holding in Pitman and the Supreme Court's dictum in Firestone. We conclude that the sliding scale approach more closely adheres to the Supreme Court's instruction to treat a conflict of interest as a "facto[r] in determining whether there is an abuse of discretion." Firestone, 489 U.S. at 115. Moreover, as we stated in a pre-Firestone decision, "the arbitrary and capricious standard is sufficiently flexible to allow a reviewing court to adjust for the circumstances alleged, such as trustee bias in favor of a third-party or self-dealing by the trustee." Sage v. Automation, Inc. Pension Plan & Trust, 845 F.2d 885, 895 (10th Cir. 1988).

In sum, we review de novo the magistrate judge's application of the arbitrary and capricious standard to FHP's decision denying Chambers benefits. Pitman, 24 F.3d at 121. Thus, we will uphold FHP's decision unless it was arbitrary and capricious, keeping in mind that FHP's conflict of interest is merely a factor in applying this flexible standard.

- 19 -

**B.    Applying the Arbitrary and Capricious Standard**

We hold that FHP did not act arbitrarily and capriciously in concluding that the PTE procedure was "experimental."  We agree with the magistrate judge that in deciding to deny Chambers his benefits, the Board members, who were stockholders of FHP, operated under a significant conflict of interest.  Despite this, the evidence strongly supports FHP's decision.  On May 1, 1990, the following evidence was before FHP:

(1) Despite twenty years of experience with PTE, the procedure still had a 13% to 15% mortality rate at UCSDMC and a 30% to 50% rate in France;
(2) Dr. Moser and his staff at UCSDMC were the only practice group successfully performing the procedure;
(3) Dr. Moser, who originated the procedure and would supervise the plaintiff's treatment, described the procedure as an "experiment with nature."
(4) The medical community performed the PTE procedure in an almost exclusively investigational setting at only two teaching facilities, UCSDMC and Duke University;
(5) Medical practitioners at other major medical institutions, such as the Mayo Clinic, referred their patients to UCSDMC for the procedure;
(6) The Health Care Financing Administration, an organization responsible for determining national government-funded coverage, had not decided whether to cover the procedure or not;
(7) Blue Cross and Blue Shield of Kansas, the state's largest insurer, "strongly" considered the procedure experimental;
(8) Blue Cross and Blue Shield's written guidelines defined procedures as experimental if performed only in investigational settings;
(9) Employees at Dorth Coombs, a Wichita company that administers healthcare plans, stated that the company would cover PTE because the procedure was in the Physician's Current Procedural Terminology book;

(10) Medical directors of Equicor and Prime Health, two Kansas health maintenance organizations, had never heard of the procedure; (11) The Oschsner Clinic, a health maintenance organization in New Orleans, covered the procedure on a case-by-case basis; (12) The medical department responsible for handling California medicare considered the procedure to be investigational.

We conclude that although the Board suffered from a conflict of interest, FHP's determination that PTE was an experimental procedure was reasonable in light of the administrative record. Accordingly, we find that FHP's decision to deny Chambers benefits was not arbitrary and capricious.

## IV.   Attorneys' Fees

Despite the fact that Chambers has not prevailed on any of his substantive and procedural ERISA claims, his attorneys argue that he is entitled to attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1), which states:

> In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

Chambers complains that the magistrate judge abused her discretion in declining to award Chambers attorneys fees and by failing to address the issue in her memorandum and order. We addressed a similar problem in Morgan v. Independent Drivers Ass'n Pension Plan, 975 F.2d 1467, 1471-72 (10th Cir. 1992):

> We have held that if a party seeks attorneys' fees under § 1132(g)(1), and the district court denies the request without explanation, a remand is necessary. . . .  Although the statute does not expressly

require that a party prevail as a condition to receiving an award of attorneys' fees . . ., we have remanded cases for denial of fees without explanation only when the party seeking fees had prevailed at least partially . . . .

As the instant case is presented to us, plaintiffs did not prevail on any of their claims. . . . Therefore, although we adhere to the rule that a district court must enunciate the reasons for a denial of a request for attorneys' fees, when the party seeking fees did not prevail on any of its claims we decline to remand to require the district court to state that the party did not prevail.

(Citations omitted). Because Chambers, like the plaintiff in Morgan, did not

prevail on any of his claims, we decline to award Chambers attorneys' fees or to

remand to the issue to the district court for a determination of the issue.

AFFIRMED.