PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 26 1997**

**PATRICK FISHER**
**Clerk**

KARL SEMTNER, as father and next
friend of Kurt Semtner, a minor,

Plaintiff-Appellee,

v.

GROUP HEALTH SERVICE OF
OKLAHOMA, INC., doing business as
Blue Cross Blue Shield of Oklahoma,
a corporation,

Defendant-Appellant.

No. 96-6224

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CV-95-386-T)

Submitted on the briefs:

Page Dobson, J.R. "Randy" Baker, and David H. Dobson of Holloway, Dobson,
Hudson, Bachman, Alden, Jennings & Holloway, Oklahoma City, Oklahoma, for
Defendant-Appellant.

Glenn Mullins, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

Before ANDERSON, LOGAN, and HENRY, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff Karl Semtner sought medical benefits under his employer's ERISA governed employee welfare benefit plan for constructive surgery related to his son's cleft palate. The plan was administered by the insurer, defendant Group Health Service of Oklahoma, Inc. d/b/a Blue Cross/Blue Shield of Oklahoma. When the administrator/insurer denied the claim plaintiff filed suit in federal district court, which granted him summary judgment. Defendant appeals. Because we agree with the district court's standard of review and interpretation of the pertinent plan documents, we affirm.[1]

Plaintiff's son was diagnosed with a "[m]axillary verticle [sic] and transverse hypoplasia secondary to a [congenital] cleft palate [and lip] deformity and four impacted wisdom teeth." I Appellant's App. 121. The child evidently suffered from a congenital underformed and misaligned upper jaw associated with abnormal fissures in his palate and lip. The child underwent corrective surgery at age fourteen. A surgeon performed a LeFort I osteotomy[2] by harvesting a bone from the boy's left hip for grafting into his alveolar cleft to

_____

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

[2] An osteotomy is a surgical procedure in which a bone is cut. See Stedman's Medical Dictionary 1110 (25th Ed. 1990).

reconstruct his upper jaw.[3] Defendant initially denied payment, stating that the plan did not cover "orthognathic surgery."[4] Id. at 168. Presumably because the term "orthognathic" does not appear anywhere in the plan or summary plan description, defendant later changed the basis of its denial to two plan exclusions: treatment of temporomandibular joint (TMJ) dysfunction, and oral surgery. See id. at 178-79. It takes the position that "any treatment (except for accident) regarding the jaw is excluded under the terms of the plan." Id. at 181.

The district court determined that defendant's plan interpretation should be evaluated under the arbitrary and capricious standard but accorded less deference than usual because of defendant's conflict of interest as both plan administrator and insurer. See Chambers v. Family Health Plan Corp., 100 F.3d 818, 826 (10th Cir. 1996) (adopting "sliding scale" of deference to plan administrator's decision when administrator operates under conflict of interest). The court determined that the TMJ dysfunction exclusion did not apply because the surgery did not treat TMJ dysfunction. It found the term "oral surgery" ambiguous. Construing that term against defendant, it concluded that defendant's interpretation of the

---

[3]    The doctor also removed his four impacted wisdom teeth. Plaintiff filed a claim for benefits on behalf of his son for the LeFort I osteotomy only.

[4]    "Orthognathic" surgery is performed to correct a malposition of the bones of the jaw. See Stedman's Medical Dictionary at 1101.

exclusion to deny relief in this case was unreasonable, and that plaintiff was entitled to judgment as a matter of law.

Before we consider defendant's arguments on the merits, we must determine whether there is a final judgment over which we have jurisdiction. The district court entered summary judgment for plaintiff on liability. It later denied a timely motion to reconsider or to amend the judgment. But no order or judgment ever specified the amount of damages being awarded to plaintiff.

The parties agree in their briefs addressing our jurisdiction that the amount of damages is readily ascertainable and undisputed. The omission of the specific amount from the judgment may therefore be viewed as a clerical error correctable under Fed. R. Civ. P. 60(a) without affecting finality. See Albright v. UNUM Life Ins. Co. of Amer., 59 F.3d 1089, 1093 (10th Cir. 1995); Pratt v. Petroleum Prod. Management, Inc. Employee Sav. Plan & Trust, 920 F.2d 651, 653 n.5, 656 (10th Cir. 1990). We thus conclude that we have jurisdiction over the appeal.

We review the grant of summary judgment de novo, using the same standard applied by the district court. See Garratt v. Walker, 121 F.3d 565, 567 (10th Cir. 1997). The parties agree that because defendant has discretion to interpret and apply plan terms, we review its decision to deny benefits to plaintiff under the arbitrary and capricious standard. See Siemon v. AT&T Corp., 117 F.3d 1173, 1177 (10th Cir. 1997). Because defendant does not adequately

-4-

challenge the district court's finding that it operated under a conflict of interest in making its decision, the district court correctly accorded its decision less deference under this standard. See Chambers, 100 F.3d at 826; Pitman v. Blue Cross & Blue Shield, 24 F.3d 118, 122-23 (10th Cir. 1994).

Defendant contends that the plan provides no benefits for a LeFort I osteotomy because of plan exclusions 23 and 37:

23. For oral Surgery procedures except for the treatment of accidental injury to the jaw, sound natural teeth, mouth or face;

* * *

37. For treatment of temporomandibular joint dysfunction, including but not limited to diagnostic procedures, splints, orthodontic/ orthopedic appliances, restorations necessary to increase vertical dimension or to restore or maintain functional or centric occlusion, alteration of teeth or jaws, Physical Therapy, and medication and behavioral modification related to conditions of temporomandibular joint syndrome or any other conditions involving the jaw joint, adjacent muscles or nerves, regardless of cause or diagnosis.

I Appellant's App. 50A, 51.

In the summary plan description, the TMJ dysfunction exclusion reads the same as in the plan. See id. at 110. The oral surgery exclusion in the summary plan description states only that benefits are not provided "For oral Surgery, except as specified." See id. We found no further explanation for the "except as specified" language in the oral surgery exclusion in the summary plan description, and defendant has not pointed out any.

The touchstone of our inquiry is whether defendant's interpretation of its plan is reasonable.  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989).  When the summary plan description and the plan language differ, the summary plan description is binding.  See Chiles v. Ceridian Corp., 95 F.3d 1505, 1515 (10th Cir. 1996).  "A summary [plan description] must be 'written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.'"  Williams v. Midwest Operating Eng'rs Welfare Fund, No. 96-3889, 1997 WL 601077, at *3 (7th Cir. Sept. 30, 1997) (quoting 29 U.S.C. § 1022(a)(1)).

We agree with the district court that the TMJ exclusion does not apply in the instant case.  There is no evidence that the surgery was done to correct a TMJ dysfunction.  We agree with the district court that the term "oral surgery" is ambiguous:  that term is neither defined in the summary plan description nor is there anything in the language of the exclusion to indicate its meaning.  Both the plan and the summary plan description expressly state that benefits are provided for surgery to improve "the physiological functioning of a malformed body member."  I Appellant's App. 50A, 109.  The LeFort I osteotomy performed on plaintiff's son entailed more than just an operation on the boy's jaw.  It involved surgery on his hip, from which the bone for graft was taken; it "released" scar

tissue left from prior closure operations on the cleft palate; it also involved the boy's "anterior nasal spine" and separation of "nasal septal walls." Id. at 121-23. It seems clearly to have improved the physiological functioning of a malformed part of the boy's body resulting from a congenital defect. The defendant's broad interpretation of the term "oral surgery" would seem to include any procedure accomplished through the mouth, which would contradict, for example, the express provision covering tonsillectomies. See id. at 104. This case is therefore distinguishable from Chambers, in which we held that "the evidence strongly support[ed]" the plan administrator's decision to deny benefits for a procedure it deemed experimental. See 100 F.3d at 827. There is no such support for defendant's broad interpretation of "oral surgery" here.

Because we agree with the district court that defendant's interpretation of the oral surgery exclusion as stated in the plan and summary plan description was not reasonable, its decision to deny benefits was arbitrary and capricious as a matter of law. It is unnecessary to decide whether the contra proferentem rule applies in ERISA cases when the plan administrator has discretion to interpret and apply plan terms.

We AFFIRM the district court's judgment but REMAND for its correction to state the amount of the damages award.