# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J. Fisher, Jr.                                      Elisabeth A. Shumaker
Clerk                                                      Chief Deputy Clerk

December 17, 1998

**TO:** ALL RECIPIENTS OF THE ORDER AND JUDGMENT

**RE:** 97-3001, *Healthcare America Plans v. Bossemeyer*
Filed on December 15, 1998

Judge Wade Brorby's Order and Judgment filed December 15, 1998 is now being amended to add the concurrence filed by Judge Robert Henry on this date. The concurrence is appended immediately following the majority decision which remains the same as when filed.

The amended copy of the decision is attached.

Very truly yours,

Patrick Fisher, Clerk

Trish Lane
Deputy Clerk

F I L E D
United States Court of Appeals
Tenth Circuit

DEC 15 1998

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

————————————————

HEALTHCARE AMERICA PLANS, INC.,

    Plaintiff-Counter-Defendant - Appellee,

v.

CONSTANCE BOSSEMEYER,

    Defendant-Counter-Claimant - Appellant.

No. 97-3001
(D. Kan.)
(D.Ct. No. 94-CV-1327)

————————————————

**ORDER AND JUDGMENT**[*]

————————————————

Before **BRORBY**, **McWILLIAMS**, and **HENRY**, Circuit Judges.

————————————————

Constance Bossemeyer brought an action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B), to recover benefits under a group health plan after Healthcare America Plans, Inc., the plan fiduciary, denied coverage for a high-dose chemotherapy with peripheral blood stem cell rescue procedure used to treat her breast cancer. Healthcare America had filed a declaratory judgment action, seeking a declaration that the medical treatment

———————————

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

undertaken by Ms. Bossemeyer was not covered by the health care plan. The two actions were consolidated. After a two-day bench trial, the district court entered a declaratory judgment in favor of Healthcare America, determining the fiduciary's denial of coverage was not arbitrary and capricious. *Healthcare America Plans, Inc. v Bossemeyer*, 953 F. Supp. 1176 (D. Kan. 1996). Ms. Bossemeyer appeals the decision of the district court. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Ms. Bossemeyer is a beneficiary of the Group Health Plan administered by Healthcare America through her husband's employment with Salina Family Physicians. *See* 29 U.S.C. § 1002(8) (defining "beneficiary"). The Group Health Plan is an employee welfare benefit plan, implemented through the purchase of insurance from Healthcare America. *See id*. § 1002(1)(A) (defining "employee welfare benefit plan"). Because it exercises discretionary authority over some claims for coverage under the plan, Healthcare America qualifies as a fiduciary with respect to the Group Health Plan. *See id.* § 1002(21)(A) (defining "fiduciary").

The terms of the health insurance coverage provided by Healthcare America are set forth in a Certificate of Coverage. The Certificate of Coverage contains

the following exclusion for experimental, unproven, or investigational procedures:

> This Agreement does not cover (unless otherwise specified) any of the following ...
>
> Medical, surgical, psychiatric procedures, organ transplants and pharmacological regimens and associated health procedures which are considered to be experimental, unproven or obsolete, investigational or educational as determined by Health Plan. "Experimental" means those procedures and/or treatments which are not generally accepted by the medical community....

In November 1993, Ms. Bossemeyer was diagnosed with Stage II, node positive breast cancer.[1] She underwent a lumpectomy, lymphadenectomy, and several months of standard-dose chemotherapy, all of which were covered under the Group Health Plan. Because fourteen lymph nodes were involved in Ms. Bossemeyer's cancer, Dr. David B. Johnson, her oncologist, concluded her best chance for long-term survival required the administration of a high-dose chemotherapy with peripheral blood stem cell rescue procedure.[2] Dr. Johnson and

---

[1] Breast cancer is divided into four principle stages, increasing in severity from Stage I to Stage IV (metastatic). *See Healthcare America Plans*, 953 F. Supp. at 1179 n.2 (characterizing the four stages).

[2] In simple terms, high-dose chemotherapy with peripheral blood stem cell rescue is a three-step process. First, blood stem cells are collected and removed from the patient's circulating, or peripheral, blood and placed in storage. Next, the patient undergoes high-dose chemotherapy in an attempt to kill the cancer cells. Finally, the stored blood stem cells are reinfused into the patient's blood.

(continued...)

Ms. Bossemeyer's primary care physician requested that Healthcare America approve payment for the procedure.

Healthcare America initially denied coverage because it considered the recommended procedure a transplant.[3] In response, Ms. Bossemeyer retained counsel and initiated a grievance. On June 9, 1994, Healthcare America's Patient Care Committee considered her grievance. The Committee determined the procedure was a transplant and was not covered by the Certificate of Coverage. For the first time, the Committee also determined the procedure was excluded from coverage because it was experimental and investigational. On June 21, 1994, Ms. Bossemeyer, through her husband, was notified of the Committee's findings. On July 21, 1994, the Patient Care Committee further considered Ms. Bossemeyer's grievance, reaffirming its decision to deny coverage.

---

[2](...continued)
*See Healthcare America Plans*, 953 F. Supp. at 1179.

[3] Because the district court determined Healthcare America did not abuse its discretion when it denied coverage under the experimental, unproven, or investigational procedure exclusion, the court did not fully reach the issue of whether the procedure was properly characterized as a "transplant." *See Healthcare America Plans*, 953 F. Supp. at 1186. Consequently, that issue is not before this court on appeal.

Ms. Bossemeyer opted to appeal the adverse decision of Healthcare America's Patient Care Committee to its Board of Directors. In the interim, Healthcare America continued to investigate the status of the high-dose chemotherapy with peripheral blood stem cell rescue procedure. *See Healthcare America Plans*, 953 F. Supp. at 1181-83 (detailing Healthcare America's investigation). The Board received the results of this investigation, along with substantial documentation compiled on Ms. Bossemeyer's behalf, prior to its August 9, 1994, grievance hearing.

Four directors attended the grievance hearing. Each director either owned stock in Healthcare America's parent company, owned options to purchase such stock, or owned stock in a professional corporation that owned shares of the parent company. In its final coverage decision, the Board reaffirmed the Patient Care Committee's decision to deny coverage for the high-dose chemotherapy with peripheral blood stem cell rescue procedure.

On August 22, 1994, Healthcare America filed an action for declaratory judgment. *Id.* at 1184. In September 1994, Ms. Bossemeyer underwent the recommended procedure, incurring medical expenses of $77,682.93 which Healthcare America declined to pay. *Id.* at 1185. Ms. Bossemeyer subsequently

brought an action under ERISA, 29 U.S.C. § 1132(a)(1)(B), to recover benefits under the Group Health Plan. *Id.* at 1178. The suits were consolidated by the district court on October 19, 1994. *Id*. at 1184.

Pursuant to the language of the applicable exclusion, the district court concluded the Group Health Plan conferred discretion on Healthcare America to determine whether procedures were experimental, unproven, or investigational. *Id*. at 1185. The district court reviewed Healthcare America's decision to deny coverage, based on its interpretation of the exclusion, under an arbitrary and capricious standard, decreasing the level of deference to reflect the directors' conflicts of interest. *Id.* at 1185-89. The district court determined Healthcare America's decision to deny coverage was based on substantial evidence. *Id*. at 1189-91. The court concluded that Healthcare America's actions were reasonable, despite the presence of a limited conflict of interest. *Id*. at 1192.

On appeal, Ms. Bossemeyer contends the district court erred in applying the arbitrary and capricious standard of review to Healthcare America's decision to deny coverage. Moreover, Ms. Bossemeyer claims the district court erred in concluding Healthcare America's decision to deny coverage was not, in fact, arbitrary and capricious.

We review the district court's legal conclusion that Healthcare America's decision to deny coverage was not arbitrary and capricious *de novo*. *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992). "Where, as here, trial is to the court, the resolution of factual issues and conflicting evidence lies solely within the province of the district court." *Ershick v. United Missouri Bank*, 948 F.2d 660, 666 (10th Cir. 1991). Thus, while the trial court's conclusions of law are reviewed *de novo*, the factual findings of the district court are set aside only if they prove to be clearly erroneous. *Id.*

Ms. Bossemeyer contends the district court erred in applying the arbitrary and capricious standard of review to the decision to deny coverage because Healthcare America had no discretion to interpret the terms of the plan. In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), the United States Supreme Court held that "a denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." If discretion is given, the decision to deny benefits is reviewed under an arbitrary and capricious standard. *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825 n.1 (10th Cir. 1996). When a conflict of interest is present, the level of deference accorded an

administrator's decision under the arbitrary and capricious standard is reduced in proportion to the seriousness of the conflict. *Chambers*, 100 F.3d at 825-27 (adopting a "sliding-scale" of deference).

Ms. Bossemeyer argues Healthcare America had no discretion to interpret coverage under the experimental, unproven or investigational procedure exclusion because the definition of "experimental" contained in the exclusion "is binding and is not ambiguous." According to her reading, only procedures "not generally accepted in the medical community" are intended to be excluded. In the alternative, she argues that if the "as determined by Health Plan" language contained in the exclusion is read as a grant of discretion, then the language of the plan is ambiguous and should be construed in her favor.

The district court determined the "as determined by Health Plan" language of the exclusion was a clear grant of discretion to the plan administrator, Healthcare America. *Healthcare America Plans*, 953 F. Supp. at 1185. We agree. *See Chambers*, 100 F.3d at 825 (interpreting similar plan language as a grant of discretion to the plan administrator).

Contrary to Ms. Bossemeyer's argument, the definition of "experimental"

contained in the exclusion does not divest the plan administrator of all discretion. First, while the term "experimental" is defined, the language of the exclusion is broader, excluding "[m]edical ... procedures which are considered to be experimental, unproven or obsolete, investigational or educational." The district court correctly determined the other terms in the exclusion were not synonymous with "experimental," and, in fact, Ms. Bossemeyer was denied coverage because the procedure in question was both experimental and investigational. *Healthcare America Plans*, 953 F. Supp. at 1181, 1187-88.

Second, while the definition of "experimental" may circumscribe the plan administrator's exercise of discretion, Healthcare America is left to determine what procedures are or are not "generally accepted by the medical community." The plan provides no criteria for making that determination. *See Smith v. CHAMPUS*, 97 F.3d 950, 956 (7th Cir. 1996) (determining that where no criteria were given for determining whether a procedure meets the "generally accepted" standard, the meaning of the term was a matter for the insurer's interpretation, "subject to deferential court review"), *cert. dismissed*, 117 S. Ct. 1027 (1997). Nor does Ms. Bossemeyer offer criteria for applying the "generally accepted" standard; she points to the evidence supporting her claim that the procedure is generally accepted, but provides no criteria for weighing that evidence.

The majority of the terms in the experimental, unproven, or investigational exclusion are undefined. Interpretation is required to apply the definition of "experimental" contained in the plan. In view of the plan's grant of discretion to construe terms to Healthcare America, the district court properly invoked the arbitrary and capricious standard of review. Under this standard, "[a]n interpretation will be upheld ... if it is reasonable and made in good faith." *Rademacher v. Colorado Ass'n of Soil Conservation Dists. Med. Benefit Plan*, 11 F.3d 1567, 1569 (10th Cir. 1993).

However, Ms. Bossemeyer asserts, without further explanation, that if the "as determined by" language in the plan is treated as "a grant of discretion to construe the meaning of the term experimental as anything other than 'not generally accepted by the medical community,' then the language is ambiguous." This argument is unavailing. To say Healthcare America retains some discretion in determining what procedures meet the "generally accepted by the medical community" standard of the definition of "experimental," is not to say they are free to ignore that definition. Nor does recognition of Healthcare America's discretion necessarily entail a finding that the terms of the plan are ambiguous.

As the district court rightly noted, "[t]he objective in construing the policy

is to 'ascertain and carry out the true intentions of the parties' by 'giving the language its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean.'" *Healthcare America Plans*, 953 F. Supp. at 1188 (quoting *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1202 (10th Cir. 1992)) (alteration in original). We will not read ambiguity into the plain language of the plan. We agree with the district court; the plan is not ambiguous and we need not construe it in either party's favor. *See id.* at 1189.

Ms. Bossemeyer further contends the district court erred in concluding Healthcare America's denial of coverage was not arbitrary and capricious. An administrator's decision is arbitrary and capricious if it is based on a lack of substantial evidence, bad faith, conflict of interest, or mistake of law. *See Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1505 (10th Cir. 1995). Ms. Bossemeyer contends Healthcare America's decision to deny coverage was arbitrary and capricious because it failed to conduct a *bona fide* investigation of the status of the procedure in the medical community, and because the denial of coverage was motivated by a conflict of interest.

According to Ms. Bossemeyer, to deny coverage under the experimental,

unproven, or investigational exclusion, Healthcare America had to determine the high-dose chemotherapy with peripheral blood stem cell rescue procedure was not generally accepted by the medical community as a treatment for Stage II breast cancer. She contends Healthcare America's investigation of the status of the procedure in the medical community was compromised because the definition of "experimental" provided in the plan was not used consistently throughout the investigation, and because some of the opinions Healthcare America relied on failed to distinguish among the stages of breast cancer when the procedure was employed. But the gist of her argument is that Healthcare America conducted a selective investigation, seeking out evidence to support denying coverage, while rejecting evidence that would support coverage.

The district court determined Healthcare America's decision "was based on sound and voluminous evidence on which [Healthcare America] deliberated carefully." *Healthcare America Plans*, 953 F. Supp. at 1191. The court found the "record demonstrates that [Healthcare America] invested a great deal of time and effort gathering and reviewing information from reputable and pertinent sources." *Id.* While noting Ms. Bossemeyer had marshaled considerable evidence to the contrary, the district court concluded Healthcare America "based its decision on substantial evidence," pointing specifically to fifteen individual and collective

sources of information considered by Healthcare America. *Id*. at 1189-91. The district court explicitly rejected Ms. Bossemeyer's contention that Healthcare America had searched only for evidence supporting denial of coverage as "without merit." *Id.* at 1191.

Based on our review of the record on appeal, we concur with the assessment of the district court. While there certainly is evidence to the contrary, the record contains substantial evidence in support of Healthcare America's determination that the high-dose chemotherapy with peripheral blood stem cell rescue procedure was an experimental and investigational procedure for Stage II breast cancer at the time of the coverage decision. That evidence includes reports from the Hayes Directory of New Medical Technologies, indicating the procedure was rated "investigational and/or experimental" for treatment of breast cancer; documentation that the Health Care Finance Administration which administers the Medicare and Medicaid programs, considered the procedure investigational and did not provide coverage for it; the existence of numerous, ongoing clinical trials; and evidence from Dr. Johnson's own clinical research, indicating the efficacy of the procedure was still under investigation. The very fact that significant controversy existed as to the status of the procedure in treating Stage II breast cancer seems to suggest it had not yet won general acceptance in the medical

community.  *See Smith*, 97 F.3d at 956-57 (discussing the difficulties courts face in determining when a once experimental treatment achieves general acceptance).

Finally, Ms. Bossemeyer argues Healthcare America made its decision to deny coverage under such "extreme" conflicts of interest, that no deference is due this decision under the arbitrary and capricious standard.  In *Firestone Tire*, the Supreme Court indicated that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'"  *Firestone Tire*, 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)) (alteration in original).  In light of the Supreme Court's guidance, we adopted a "sliding scale" approach for when the presence of a conflict of interest triggers a less deferential review under the arbitrary and capricious standard.  *Chambers*, 100 F.3d at 826-27.  "Under this approach, the reviewing court will always apply an arbitrary and capricious standard, but the court must decrease the level of deference given to the conflicted administrator's decision in proportion to the seriousness of the conflict."  *Id*. at 825.

The district court found, as a matter of fact, that "[i]n deciding whether [Ms. Bossemeyer's] proposed treatment was covered under its Certificate of

Coverage, [Healthcare America] was operating under a limited conflict of interest." *Healthcare America Plans*, 953 F. Supp. at 1183. The district court also concluded "[t]here is simply no evidence that [Healthcare America] did not conduct ... a full and fair review, and [Ms. Bossemeyer] has not demonstrated that Board members or others who reviewed [her] claim were motivated by a desire to enhance their personal or corporate financial position at [her] expense." *Id.* at 1191. Under the sliding scale of deference set forth in *Chambers*, the court held that Healthcare America's decision to deny coverage was not arbitrary and capricious. *Id.* at 1192.

We will not set aside the district court's factual findings unless they are clearly erroneous. *Ershick*, 948 F.2d at 666. Ms. Bossemeyer contends the conflict of interest was extreme rather than limited because Healthcare America was in financial decline; the directors making the final coverage decision had a financial interest in denying coverage; and their decision was based on inflated estimates of the costs of the procedure, costs their reinsurance agent presumably would not cover.

In support of her claim that Healthcare America was in financial decline, Ms. Bossemeyer points to the decline in the number of members paying premiums, Healthcare America's primary source of income. However, evidence in

the record also indicates Healthcare America did not experience a commensurate decline in profitability. More importantly, Ms. Bossemeyer points to nothing in the record which would undermine the district court's finding that Healthcare America's financial condition did not influence its coverage decision. *Healthcare America Plans*, 953 F. Supp. at 1191.

Ms. Bossemeyer argues each member of the Board of Directors had a financial interest in Healthcare America, giving each a "personal incentive" to deny her coverage. However, the district court, well aware of the existence of the financial conflicts, flatly rejected this claim, determining there was no evidence the personal or corporate financial incentives of the directors influenced their decision making. *Id*. We find nothing in the record to suggest this finding was error.

Finally, Ms. Bossemeyer claims the decision to deny coverage was based on inflated estimates of the costs of the procedure, combined with the knowledge that Healthcare America's reinsurance company would not cover the procedure under its policy. She claims the Board of Directors estimated the costs could exceed $300,000. The record simply does not support this assertion. From Ms. Bossemeyer's perspective, the most the record indicates is that some of the

directors may have been aware that estimated costs for the procedure ranged from $48,700 to $384,000, with a median cost of $88,000. Similarly, the record does not establish precisely what costs would be paid by Healthcare America and which would be covered through reinsurance. Ms. Bossemeyer points to nothing in the record which would suggest Healthcare America's decision was improperly influenced by cost estimates, inflated or otherwise.

We concur with the district court's conclusion that Healthcare America's decision to exclude coverage for Ms. Bossemeyer's high-dose chemotherapy with peripheral blood stem cell rescue procedure was not arbitrary and capricious, taking into consideration the reduced deference we afford that decision because of the presence of a conflict of interest.

Accordingly, the decision of the district court is **AFFIRMED**.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge

-17-

No. 97-3001, <u>Healthcare America Plans v. Bossemeyer</u>

HENRY, Circuit Judge, concurring.


I concur, but write separately in order to stress the closeness of this case, and the difficulty of applying our sliding scale jurisprudence, <u>Chambers v. Family Health Plan Corp.</u>, 100 F.3d 818 (10th Cir. 1996), to this type of case. I also note, however, that if the plaintiff had offered more evidence that the Board's decision was arbitrary – unsupported by substantial evidence in the administrative record – the sliding scale decreasing the deference afforded the Board under arbitrary and capricious review might have led to another result.

It appears that, despite a significant conflict of interest, a very strong case is needed to reverse the decision of a seriously conflicted Board. Notably, both the magistrate in <u>Chambers</u> and the district court judge in this case expressed concern with their respective decisions and qualified them as mandated by a constraining standard of review. <u>See</u> <u>Chambers</u>, 100 F.3d at 821 ("The magistrate stated that if she had been able to conduct a de novo review of all the evidence, she would have found that FHP's denial of coverage was erroneous."); <u>Healthcare America Plans, Inc. v. Bossemeyer</u>, 953 F. Supp. 1176, 1192 (D. Kansas 1996) ("Although the Court . . . may well have decided the issue [of whether to deny coverage] differently based on the substantial evidence which plaintiff presented

to HAPI in support of her claim for coverage, the Court cannot find on this record that HAPI's decision was arbitrary and capricious under the standard of deference set forth in <u>Chambers</u>.") These are difficult cases, and I believe they are made more difficult by a sliding scale standard that seems to give undue deference to seriously conflicted decision-making bodies.

In fact, it is not clear exactly how a reviewing court is supposed to decrease the deference owed the Board in proportion with the severity of the conflict and yet maintain an arbitrary and capricious standard of review. In <u>Chambers</u>, the Court did so by finding a conflict, terming the conflict significant, and stating that the deference owed to the Board should be proportionally decreased, treating arbitrary and capricious review as a "range and not a point." <u>See</u> <u>Chambers</u>, 100 F.3d at 827 (quoting <u>Van Boxel v. Journal Co. Employees' Pension Trust</u>, 836 F.2d 1048, 1052-53 (7th Cir. 1987). However, having articulated this test, the Court proceeded to hold that the Board "did not act arbitrarily and capriciously . . . [because] the *evidence strongly supports* [the Board's] decision." <u>Id.</u> at 827. (emphasis added).

In Ms. Bossemeyer's case, the district court found that a similar financial conflict "undoubtedly existed," <u>Healthcare America</u>, 953 F. Supp. at 1191, but that the plaintiff presented no evidence that the financial conflict actually motivated the decision, and no evidence that the Board had engaged in other than a full and

fair review.  See id.  One wonders what evidence a plaintiff would ever have that Board members were actually motivated by a conflict beyond that simply establishing the existence and severity of the conflict.  Indeed, statements by at least two members of the Board indicating they did not fully consider the evidence presented by Ms. Bossemeyer, including a statement by the Chairman that he discounted the evidentiary value of the evidence submitted by the plaintiff on the ground that the package presented in support of her position was too "one-sided," Rec. vol. II, at 395, cause me to dispute the district court's conclusion that "no evidence" was presented.  Nevertheless, with what we have in this case, reviewing the district court's factual findings for clear error and the Board's decision under an arbitrary and capricious standard, I cannot vote to reverse.

My fundamental concern with the issues raised by this case is legal:  I am uncertain how decreased deference under the sliding-scale approach actually shifts the standard of review, as the application of the sliding-scale standard does not appear to be identifiably different than straight arbitrary and capricious review.  I fear the sliding-scale is a largely illusory standard, and that our court will, in the future, need to revisit or refine the Chambers test.